# MAUREEN C. TOVISH ET AL. *v.* GERBER ELECTRONICS ET AL.
## (11484)

O'CONNELL, FOTI and FREEDMAN, Js.

Argued May 6—decision released August 17, 1993

*Scott Wilson Williams,* for the appellants (defendants).

*Robert R. Sheldon,* with whom, on the brief, was *Gerard S. Spiegel,* for the appellees (plaintiffs).

*Saranne P. Murray, Gregory T. D'Auria, Christine L. Chinni* and *Stephen Ostrach* filed a brief for Connecticut Business and Industry Association as amicus curiae.

FOTI, J. The defendants, Gerber Electronics and Home Insurance Company, appeal from the decision of the workers' compensation review board affirming the finding of the compensation commissioner that the named plaintiff's[1] deceased husband, Richard Tovish, suffered a compensable injury. The defendants claim that the review board improperly (1) failed to order the commissioner to add certain factual findings to his finding and award of March 7, 1991, pursuant to their motion to correct, (2) failed to determine that the commissioner's conclusion that the decedent was shoveling snow to enable him to call on customers was unsupported by the evidence, and (3) failed to reverse the commissioner's conclusion that the plaintiff had sustained her burden of proof that the decedent's death arose out of and in the course of his employment. We affirm the review board's decision.

The decedent, Richard Tovish, was employed by Gerber Electronics as an "outside salesman." Gerber Electronics has no office or place of business in Con-

---

[1] The claim was brought by the decedent's widow, Maureen C. Tovish, on behalf of herself and her two minor children. We will refer to Maureen C. Tovish as the plaintiff.

necticut; its principal place of business is in Norwood, Massachusetts. The decedent maintained an office in the basement of his house in Monroe, which he used exclusively for Gerber business. As a traveling salesman, he was responsible for customers in western Connecticut and part of New York. He called Gerber daily and used his own phone and car to call and visit his assigned accounts. Although he was expected to maintain these accounts and to visit them regularly, he was not under a strict regimen of work hours and did not follow an explicit itinerary.

On January 20, 1987, snow was falling in Monroe. The decedent's wife, the plaintiff, was sick in bed, as was his eldest son. Local schools were closed. The decedent had breakfast and then went to his office to work, according to his usual routine. He told the plaintiff that he had to call on some customers and therefore was going to shovel the driveway. The plaintiff later observed the decedent shoveling snow. At the time, he was wearing the type of clothing he usually would wear when calling on customers. After shoveling, the decedent went into his bedroom and complained of chest pains. The plaintiff helped him get comfortable and called an ambulance. The decedent turned blue and was given cardiopulmonary resuscitation by ambulance personnel before being taken to the hospital, where he died later that day. The decedent's physician testified that the decedent had a history of high blood pressure and that shoveling snow can lead to cardiac arrest in an individual with that condition.

On the basis of these facts, the commissioner determined that the decedent died of a cardiac arrest caused by shoveling snow. He also determined that the only reason the decedent had been shoveling snow was to enable him to drive his car out of the driveway to call on Gerber customers, and thus the decedent had

suffered a compensable injury. The commissioner therefore awarded benefits to the plaintiff and her two minor children pursuant to General Statutes § 31-306.

The defendants appealed the commissioner's decision to the compensation review board. They also filed a motion to correct the findings, which the commissioner denied. In a two to one decision, the review board upheld the commissioner's finding and award and his denial of the motion to correct. This appeal followed.

I

The defendants first claim is the review board improperly failed to order the commissioner to correct his finding and award by adding certain factual findings. The defendants specifically sought to add to the commissioner's finding what they contended was uncontradicted evidence to show (1) that the decedent was not required to make customer calls when it was snowing, (2) that the plaintiff could not have observed the decedent's activities while he was downstairs in the house because she remained upstairs, (3) that the decedent or his son would shovel the driveway on snowy days even when he did not have to call on customers, and (4) that the decedent was going to wait until the snow let up before shoveling. The review board determined that these facts, even if added to the finding, would not alter the commissioner's ultimate conclusion that the decedent had suffered a compensable injury. We agree.

"[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . [O]n review of the commissioner's findings, the [review board] does not retry the facts nor hear evidence. It considers no evidence other than that certified to it by the commissioner, and then for the limited purpose of determining whether or not the finding should be corrected, or whether there was any evidence to support

in law the conclusions reached. It cannot review the conclusions of the commissioner when these depend upon the weight of the evidence and the credibility of witnesses." *Adzima* v. *UAC/Norden Division,* 177 Conn. 107, 117–18, 411 A.2d 924 (1979).

The finding of the commissioner cannot be changed "unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed." *Wheat* v. *Red Star Express Lines,* 156 Conn. 245, 248, 240 A.2d 859 (1968). "It [is] the commissioner's function to find the facts and determine the credibility of witnesses . . . and a fact is not admitted or undisputed merely because it is uncontradicted." (Citation omitted.) Id., 249. A material fact is one that will affect the outcome of the case. See *Tutsky* v. *YMCA of Greenwich,* 28 Conn. App. 536, 540, 612 A.2d 1222 (1992).

The defendants contend that the facts they sought to add to the commissioner's finding are material facts that would have made a difference in the result of this case. We conclude that the review board properly refused to order that the finding be corrected because, even if the finding were corrected as the respondents had requested, the commissioner's ultimate conclusion would not change.

The defendants first sought to add to the finding the fact that the decedent did not have to make customer calls when it was snowing. Although Robert Fox testified that the decedent was not required or expected to make sales calls during periods of inclement weather, he did not testify that the decedent was required or expected to stay home on stormy days. Rather, Fox testified that the decedent was responsible for setting his own sales itinerary and determining which customers he would see on each day. The fact that the decedent was not *required* to make a sales call on the

date of his injury does not undermine the commissioner's conclusion that the decedent was on his way to make a sales call on this particular snowy day.

The defendants' second requested finding was the plaintiff's statement that she could not be sure the decedent had engaged in work activities while he was downstairs because she was sick in bed upstairs at the time. The plaintiff testified that after the decedent got out of bed, showered and dressed, he told her that he was going downstairs to do some work. The fact that the plaintiff did not actually see the decedent engaged in work did not require the commissioner to disregard the plaintiff's testimony and to determine that the decedent was not engaged in work related activities. The decedent's statement of intent was competent evidence that he had, in fact, gone downstairs and worked. See *State* v. *Santangelo,* 205 Conn. 578, 592, 534 A.2d 1175 (1987) (hearsay statements of an unavailable declarant, made in good faith and not for a self-serving purpose, that express his intentions as to the immediate future are admissible and allow the trier of fact reasonably to infer that the declarant's expressed intention was carried out); *Mutual Life Ins. Co.* v. *Hillmon,* 145 U.S. 285, 295–96, 12 S. Ct. 909, 36 L. Ed. 706 (1892). The plaintiff's inability to see the decedent engaged in work does not, as the defendants contend, relegate her testimony to the realm of speculation and conjecture; at most, this inability goes to the weight of the evidence and to her credibility, both of which are committed to the commissioner's discretion. *Adzima* v. *UAC/Norden Division,* supra.

The defendants' third requested finding was the plaintiff's statement that the decedent and his son would, as a matter of course, shovel the driveway after it snowed. This finding, too, was immaterial. Even if adopted, it would not require the commissioner to alter

his finding and conclusion that on the particular day in question the decedent's *sole purpose* in shoveling snow was to enable him to call on customers.

The defendants' final requested finding[2] was the plaintiff's statement that the decedent had said that he was going to wait until the snow let up before shoveling the driveway. This finding is likewise immaterial to the commissioner's conclusion that the decedent's shoveling was done to permit him to call on customers. The evidence before the commissioner indicated that the decedent determined his own travel itinerary and that his work day had begun before he shoveled the driveway. The fact that the decedent had planned to wait until the snow let up but went out anyway to shovel the driveway is irrelevant to the commissioner's decision.

The defendants' claim as to the motion to correct "is essentially an attempt to get the [review board] and this court to retry the facts. This we will not do." *McDonough* v. *Connecticut Bank & Trust Co.*, 204 Conn. 104, 119, 527 A.2d 664 (1987). The commissioner's determination that the proffered testimony was not material to the ultimate conclusion that the decedent had suffered a work related injury, being one of fact, was committed to his discretion. *Tutsky* v. *YMCA of Greenwich,* supra, 545; *Wheat* v. *Red Star Express Lines,* supra. We conclude that the review board properly affirmed the commissioner's denial of the motion to correct.

## II

The defendants next claim that the review board improperly affirmed the commissioner's conclusion that the decedent's only reason for shoveling was to ena-

---

[2] The defendants' motion to correct actually requested five corrected findings. They have pursued only four of these on appeal.

ble him to visit customers. The defendants contend that the review board should not have affirmed this conclusion because it was unsupported by the evidence.

We reiterate that " '[t]he power and duty of determining the facts rests on the commissioner, the trier of facts. *Czeplicki* v. *Fafnir Bearing Co.,* 137 Conn. 454, 457, 78 A.2d 339 (1951). The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. *Mathurin* v. *Putnam,* 136 Conn. 361, 366, 71 A.2d 599 (1950).' *Adzima* v. *UAC/Norden Division,* [supra]; *Murchison* v. *Skinner Precision Industries, Inc.,* 162 Conn. 142, 145, 291 A.2d 743 (1972)." *Fair* v. *People's Savings Bank,* 207 Conn. 535, 539, 542 A.2d 1118 (1988). " '[I]n determining whether a particular injury arose out of and in the course of employment, the [commissioner] must necessarily draw an inference from what he has found to be the basic facts.' " Id. "If supported by evidence and not inconsistent with the law, the [commissioner's] inference that an injury did or did not arise out of and in the course of employment is conclusive. [Neither the review board nor this court] can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted . . . because of a belief that the one chosen by the [commissioner] is factually questionable. . . . It matters not that the basic facts from which the [commissioner] draws this inference are undisputed rather than controverted. . . . It is likewise immaterial that the facts permit the drawing of diverse inferences. The [commissioner] alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court." (Citations omitted; internal quotation marks omitted.) Id., 539–40.

"[T]he compensation review [board] hear[s] the appeal on the record of the hearing before the commissioner unless it determines, under the statute, to take additional evidence or testimony. . . . In making its final determination of an appeal, the compensation review [board] shall issue its decision, affirming, modifying or reversing the decision of the commissioner. . . . The decision of the compensation review [board] must stand unless it results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. *Adzima* v. *UAC/Norden Division,* supra, 118 . . . ." (Citations omitted; internal quotation marks omitted.) *Castro* v. *Viera,* 207 Conn. 420, 440, 541 A.2d 1216 (1988).

The defendants rely heavily on *D'Angelo* v. *Connecticut Light & Power Co.,* 146 Conn. 505, 152 A.2d 636 (1959), to support their assertion that "testimony by a surviving spouse regarding statements made by a decedent as to the cause of injury, which testimony is not independently substantiated or corroborated by other testimony or facts, is as a matter of law insufficient evidence upon which to support a Commissioner's conclusions." They argue that because in the present case the plaintiff's testimony that the decedent intended to call on customers was uncorroborated by telephone logs or notes of the decedent or by testimony of any customers whom he planned to visit, the commissioner was not entitled to rely on her testimony to establish the fact that the sole reason the decedent was shoveling was to call on customers. We disagree.

*D'Angelo* is not like this case. In *D'Angelo,* our Supreme Court found that the commissioner's finding merely "recite[d] the evidential statement by the [plaintiff] of her husband's explanation of the cause of [his injury]. It [made] no attempt to determine whether the [injury] was inflicted by a fellow employee as the decedent first stated or was in fact a bump which he sus-

tained at work. A finding should state the facts found and should not contain excerpts from evidence and purely evidential facts." Id., 507. *D'Angelo* does not, as the defendants contend, stand for the broad proposition that the testimony of a decedent's spouse on all matters must be independently corroborated or be otherwise insufficient as a matter of law.

In *D'Angelo,* the court was concerned that the finding "fails to indicate that the commissioner relied upon inference, and it does not purport to show the facts, rather than the evidence, from which an inference could be drawn." Id., 508. Rather, the commissioner merely recited the testimony of the decedent's wife *as to the cause of injury* and adopted that as his finding. Here, by contrast, the commissioner did not rely on the plaintiff's testimony as to the cause of injury. Nor did he simply adopt her testimony as his finding. Rather, the commissioner considered her testimony as well as the other testimony in the case and drew from that evidence the factual inference that the decedent had shoveled snow on January 20, 1987, solely to be able to call on Gerber customers. As we pointed out earlier in this opinion, the fact that the plaintiff's testimony was uncorroborated goes to its weight and to her credibility, not to its competence or sufficiency. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.30.1.

The defendants argue, however, that the subordinate facts do not permit the conclusion that the decedent's sole purpose in shoveling his driveway was to permit him to call on customers. They contend that "there are other logical reasons why the decedent shoveled the snow in his driveway." Their general contention is that "[s]hoveling snow is in the nature of an everyday personal preparatory activity such as taking out the garbage, showering, brushing teeth, and would not be done solely to enable the decedent to call on a customer."

The question of whether an injury arose out of and in the course of the employment is factual in nature and is committed to the commissioner's discretion. *Tutsky* v. *YMCA of Greenwich,* supra. " 'The discretion of a commissioner in a matter of this kind should not be lightly disturbed.' *Furlani* v. *Avery,* 112 Conn. 333, 339, 152 A. 158 (1930)." Id.

The subordinate facts in this case indicated that, at the time he shoveled the driveway, the decedent already had begun his regular work day. Part of his regular work routine was to call on customers using his own vehicle. On the date of injury, the decedent told his wife that he was going to shovel the driveway so he could call on customers. These subordinate facts were sufficient to permit the commissioner's conclusion that the sole purpose that the decedent had shoveled his driveway *on the date of the injury* was to call on customers. The fact that the decedent, on other occasions, may have shoveled his driveway for purely personal reasons, does not undermine this factual conclusion.

Because the commissioner's determination was not based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from those facts, the review board properly upheld the commissioner's finding and award. *Fair* v. *People's Savings Bank,* supra, 546. We, as is the review board, are bound by the facts found by the commissioner. Id., 539–40. Because those facts are supported by the evidence and not inconsistent with the law, we will not disturb them.

### III

The defendants' final claim is that the review board improperly affirmed the commissioner's determination that the plaintiff had sustained her burden of proof that the decedent's injury arose out of and in the course of his employment with Gerber. The defendants again

point to a lack of evidence independently to corroborate the plaintiff's testimony that the decedent had begun work related activities when he went downstairs. Because the plaintiff offered no phone logs, notes, or the like, they contend that she failed to establish that the decedent had even begun his regular work day at the time he shoveled his driveway. We disagree.

The commissioner found that the decedent's injury occurred in the course of and in the scope of his employment. The finding specifically refers to evidence on which the commissioner based this factual inference, including the plaintiff's testimony as to the decedent's having eaten breakfast and gone downstairs to his office as he normally did in the morning, her testimony that the decedent had said he had to call on customers, her testimony that he was wearing business attire at the time he was shoveling, and Fox's testimony that the decedent was expected to maintain his accounts and visit them regularly. On the basis of our review, we cannot conclude that the commissioner's determination that the decedent had begun his regular work day and was in the course of his employment at the time of the injury was without a sufficient basis in the evidence presented.

The defendants and amici[3] urge us, however, to conclude that, as a matter of law, shoveling snow is not an activity arising out of and in the course of his employment within the meaning of General Statutes § 31-275 of the Workers' Compensation Act. They contend that we should use this case to define the limits of worker's compensation liability in the context of home based employment. We decline to do so.

"It is an axiom of [worker's] compensation law that awards are determined by a two-part test. The [claim-

---

[3] Separate amicus briefs were filed by the Insurance Association of Connecticut and American Insurance Association and by the Connecticut Business and Industry Association.

ant] has the burden of proving that the injury claimed arose out of the employment and occurred in the course of the employment. 'There must be a conjunction of the two requirements, "in the course of the employment" and "out of the employment" to permit compensation. The former relates to the time, place and circumstance of the accident, while the latter refers to the origin and cause of the accident.' " *McNamara* v. *Hamden,* 176 Conn. 547, 550, 398 A.2d 1161 (1979). "[A]n injury arises in the course of the employment when it takes place (a) within the period of the employment, (b) at a place where the employee may reasonably be and (c) while he is reasonably fulfilling the duties of the employment or doing something incidental to it. . . . An injury is said to arise out of the employment when (a) it occurs in the course of the employment and (b) is the result of a risk involved in the employment or incident to it or to the conditions under which it is required to be performed." (Citations omitted.) *Dombach* v. *Olkon Corporation,* 163 Conn. 216, 221–22, 302 A.2d 270 (1972).

It is undisputed that, as an outside salesman, the decedent worked out of his house. He was thus at a place he could reasonably be on the date of the injury. The evidence also reveals that the injury occurred "within the period of employment." While the decedent's job enabled him to set his own itinerary and hours for customer visits, the evidence before the commissioner indicated that the decedent's typical work day already had begun when he commenced shoveling the driveway: the decedent had risen, showered, dressed, and gone downstairs to his office to work.

In *McNamara* v. *Hamden,* supra, 553, the court stated that "[w]hen an employee is *on the premises* and is *within the period of employment* . . . the basic test should be remembered and applied: Is this activity incidental to the employment?" The sole question,

therefore, is whether the act of shoveling snow on January 20, 1987 was incidental to the decedent's employment. "The meaning of the term 'incidental' need not be defined as compulsion by or benefit to the employer in all cases." Id. Whether an activity is incidental to the employement is a fact bound issue to be resolved by the trier of fact. *Pagani* v. *BT II, Ltd. Partnership,* 24 Conn. App. 739, 592 A.2d 397, cert. dismissed, 220 Conn. 902, 593 A.2d 968 (1991).

The facts found by the commissioner show that the decedent regularly used his own vehicle to perform the duty of calling on customers. The decedent's snow shoveling, which the commissioner found was directed solely toward the use of his vehicle for employment purposes, was sufficiently incidental to that use. The injury, therefore, occurred "in the course of" the decedent's employment. *McNamara* v. *Hamden,* supra. The facts found also show that the decedent's injury, which resulted from a risk incident to the conditions under which he regularly performed his job—using his own vehicle to call on customers—arose "out of the employment." *Dombach* v. *Olkon Corporation,* supra, 222.

Because the decedent's injury arose out of and in the course of his employment, we conclude that the review board properly affirmed the commissioner's determination that the decedent suffered a compensable injury.

The judgment is affirmed.

In this opinion FREEDMAN, J., concurred.

O'CONNELL, J., dissenting. I do not agree with the majority that the decedent's death occurred in the course of and arising out of his employment. The specific issue is whether the decedent had commenced work for his employer when he was shoveling his driveway. In its affirmance, the majority stresses deference to the facts as found by the commissioner. While I agree

that the commissioner has the power and duty to determine the facts, it is fundamental that "the conclusions drawn by the commissioner cannot stand when they result from an incorrect application of the law." *Kinney* v. *State,* 213 Conn. 54, 59, 566 A.2d 670 (1989).

It is my opinion that the decedent was not engaged in a work activity, but rather, in a preliminary activity in preparation for work. Such an activity, like showering, dressing or packing a lunch, is not covered by the Workers' Compensation Act. The significance placed by the majority on the decedent's stopping at his desk and doing paperwork before going to his car escapes me. If he had not done this office work first, would his death not have been covered by the act? Likewise, if he had gone downstairs to his office to do paperwork prior to showering and dressing for the day, would an injury he sustained in the shower or while shaving be within the scope of the act? The decision reached by the majority would appear logically to extend coverage to such situations.

A line must be drawn between preparation for work and the commencement of work. I suggest that under the facts of this case, the line must be fixed no earlier than when the decedent exited his driveway and headed down the road toward his first customer. The decedent's act of shoveling the driveway was a common homeowner's task performed in preparation for work. If the Workers' Compensation Act is to be extended to cover such activities, the extension must be accomplished by legislation and not by a worker's compensation commissioner. See id., 66.

I also do not agree with the majority's affirmance of the review board's conclusion concerning the addition of facts sought by the defendants. The majority opinion states, "The defendants specifically sought to add to the commissioner's finding what they contended

was uncontradicted evidence to show (1) that the decedent was not required to make customer calls when it was snowing, (2) that the plaintiff could not have observed the decedent's activities while he was downstairs in the house because she remained upstairs, (3) that the decedent or his son would shovel the driveway on snowy days even when he did not have to call on customers, and (4) that the decedent was going to wait until the snow let up before shoveling.''

The majority agreed with the review board that even if these four facts were added to the commissioner's finding they would not have affected the result of the case. These facts were material and undisputed. They go to the core of the defendants' claim that the decedent was merely getting ready to go to work when he suffered the heart attack. ''The finding in a compensation case should contain all the subordinate facts which are pertinent to the inquiry, and the conclusions of the commissioner therefrom. . . . If a finding does not conform to those requirements . . . neither [the compensation review board] nor this court is in a position to decide whether the award was correct and just or not. . . . To refuse to find the facts which a party seeks to have stated because the commissioner deems them unnecessary or immaterial is not ordinarily fair to the parties [or] the court . . . . It is not fair to the parties because they are entitled to have found such proven facts as they deem it necessary to present to the court upon the appeal. . . . Cases under the Workmen's Compensation Act are upon a different basis from actions between ordinary litigants. No case under this Act should be finally determined when [the compensation review board], or this court, is of the opinion that, through inadvertence, or otherwise, the facts have not been sufficiently found to render a just judgment.'' (Citations omitted; internal quotation marks omitted.) *McQuade* v. *Ashford,* 130 Conn. 478, 482, 35 A.2d 842 (1944).

Accordingly, the review board should have ordered the commissioner to add those facts to the findings. I do not feel, however, that a remand to the commissioner is necessary because, upon correction of the findings, the commissioner could not legally reach any conclusion other than that the decedent's death was not within the scope of the Workers' Compensation Act. See *Howe* v. *Watkins Bros.*, 107 Conn. 640, 648, 142 A. 69 (1928) (*Wheeler, C. J.*, dissenting from rescript).

I would reverse the decision of the compensation review board.