ROSE LABADIE *v.* NORWALK REHABILITATION
SERVICES, INC., ET AL.
(SC 17264)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued April 19—officially released July 5, 2005

*Cynthia J. Coccomo*, for the appellants (defendants).

*Gregory S. Kimmel*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The sole issue in this certified appeal[1] is whether the Appellate Court properly concluded that a home health care worker, who was required to travel to the homes of patients as a part of her employment, sustained an injury compensable pursuant to the Workers' Compensation Act (act), General Statutes § 31-275 et seq., when she was struck by a motor vehicle while crossing the street en route to the home of her first patient of the day. *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, 84 Conn. App. 220, 235–36, 853 A.2d 597 (2004). We conclude that the injuries of the plaintiff, Rose Labadie, are compensable under the act because travel was an integral part of the service that she was employed to provide. The plaintiff is, therefore, within the class of persons contemplated by the traveling employee exception to the "coming and going rule," under which "injur[ies] sustained on . . . public highway[s] while going to or from work [are] ordinarily not compensable." *Dombach* v. *Olkon Corp.*, 163 Conn. 216, 222, 302 A.2d 270 (1972). We, therefore, affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following undisputed facts and procedural history. "The plaintiff resided in an apartment building at 300 Tresser

[1] This court granted the defendants' petition for certification to appeal limited to the following issue: "Did the Appellate Court properly determine that a home health care worker, who was required by her employer to travel to the homes of its clients, sustained a compensable injury when struck by a motor vehicle en route to her first assignment of the day?" *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, 271 Conn. 925, 926, 859 A.2d 579 (2004).

Boulevard in Stamford and was employed as a certified nursing assistant-home health care worker by both the defendant [Norwalk Rehabilitation Services, Inc.][2] and Atrium Homecare (Atrium). Both of her employers required the plaintiff to [provide health care services at] the homes of their clients. The plaintiff does not hold a Connecticut motor vehicle operator's license and [with her employer's knowledge and permission] routinely took a bus to the homes of the people to whom she provided health care services for the defendant. The defendant reimbursed the plaintiff for the bus fare she paid to travel from the home of one of its clients to another, but it did not reimburse the fare she paid to travel from her home to the day's first assignment or from the day's last assignment back home.

"From 7 to 9 a.m. on February 18, 1998, the plaintiff performed health care services for one of Atrium's clients, who happened to reside in the plaintiff's apartment building. At 9 a.m., she left 300 Tresser Boulevard and walked to a bus stop where she boarded a bus to travel to the home of one of the defendant's clients on Knicker-bocker Avenue in Stamford. The client on Knicker-bocker Avenue was the first client of the day for whom the plaintiff was scheduled to provide the defendant's services. She alighted from the bus on Hope Street and, as she crossed that street, was struck by a motor vehicle. As a result of the accident, the plaintiff sustained serious injuries to her arms and leg.

"The plaintiff [thereafter] filed a claim pursuant to the [act] . . . seeking benefits afforded by the act. She named the defendant as the respondent. [In response] [t]he defendant filed a form 43 denying the plaintiff's

---

[2] "The CNA Insurance Company also is a defendant. Because the liability of CNA Insurance Company is contingent on the liability of Norwalk Rehabilitation Services, Inc., we refer in this opinion to Norwalk Rehabilitation Services, Inc., as the defendant." *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, supra, 84 Conn. App. 221 n.1.

claim on the ground that the plaintiff was not injured during the course of her employment.

"In his finding and award, the [workers' compensation commissioner (commissioner)] adopted the parties' stipulation of facts and also found, on the basis of the plaintiff's deposition testimony, that she rarely went to the defendant's place of business in Norwalk, and that she received her assignments via telephone at her Tresser Boulevard home, where she also completed paperwork and received her paychecks. She filed her reports by mail. [Based on this testimonial evidence] [t]he commissioner concluded that the plaintiff's home was tantamount to a satellite office of the defendant." *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, supra, 84 Conn. App. 222–23.

Additionally, the commissioner found that "[t]he plaintiff was required to use the public highways to attend to her duties for the defendant, which was for the defendant's benefit. The commissioner also found that it was unclear whether the plaintiff was reimbursed for her travel from 300 Tresser Boulevard to the home of the defendant's first client of the day. The commissioner concluded that the plaintiff was injured in the course of her employment and that she had sustained a compensable injury.

"The defendant [then] filed a motion to correct the commissioner's finding, asking the commissioner to delete his finding that the plaintiff's home was tantamount to a satellite office and that it was unclear [whether] the defendant reimbursed the plaintiff for travel to the first appointment of the day. The defendant also asked the commissioner to dismiss the claim because the plaintiff failed to demonstrate that she had sustained a compensable injury. The commissioner denied the motion to correct. The defendant [thereafter] appealed to the [workers' compensation review board

(board)], asserting that the commissioner improperly denied the motion to correct and . . . the award was contrary to the board's existing decisions.

"In an opinion dated June 21, 2001, the board sustained the defendant's appeal, concluding, among other things, that the commissioner had applied improperly the 'coming and going rule'; see *Lake* v. *Bridgeport*, 102 Conn. 337, 342–43, 128 A. 782 (1925); and the 'benefit test'; id., 343; to the facts of this case. It remanded the case to the commissioner, however, with direction to conduct further proceedings to determine whether the plaintiff's home was a satellite office and to consider the legal significance of the plaintiff's having cared for one of Atrium's clients prior to setting out for the defendant's client on Knickerbocker Avenue.

"On remand, the commissioner addressed the three indicia of an established home workplace cited in the board's decision . . . [and] found that regardless of whether the plaintiff performed duties for the defendant at her home, the amount of time she spent doing it was about fifteen minutes a month, which was not a substantial quantity of time. [Additionally] [t]he plaintiff kept no employment related equipment in her apartment, save a telephone. [Therefore] [t]he commissioner was unable to determine whether there were special circumstances of employment that made it necessary, rather than personally convenient, for the plaintiff to complete some of her duties in her apartment.

"As to the legal consequences of the plaintiff's having performed services for Atrium after leaving her apartment but prior to her leaving the apartment building, the commissioner found that the question concerned the parameters of his use of the term premises. He found that the plaintiff had not left the premises until she left the curb or lot line of 300 Tresser Boulevard.

The commissioner thus concluded that the plaintiff had not deviated from her employment with the defendant.

"The commissioner also determined that the defendant did not reimburse the plaintiff for travel to and from her home, only for travel between the homes of its clients, which implied that the plaintiff was not in the course of her employment when she was traveling to her first appointment for the defendant. With regard to the 'coming and going rule' and the 'benefit test,' the commissioner concluded that because he had determined that the plaintiff's apartment was a satellite office, the rule and test did not apply. The defendant again filed a motion to correct, which the commissioner denied.

"The defendant once more appealed to the board, essentially claiming that the plaintiff's home was not a satellite office and that 300 Tresser Boulevard was not part of the premises of the satellite office, if one existed. The defendant further argued that the plaintiff's tending to the needs of the Atrium patient before departing for Knickerbocker Avenue was a deviation from her employment with the defendant. The board concluded, in an opinion dated June 3, 2003, that there was insufficient evidence to support the commissioner's finding that the defendant maintained a satellite office in the plaintiff's home or that the plaintiff had begun her workday for the defendant at the time she was injured. Accordingly, the board reversed the finding and award of the commissioner." (Citation omitted.) *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, supra, 84 Conn. App. 223–25.

The plaintiff thereafter appealed the decision of the board to the Appellate Court, claiming: "(1) that the board failed to abide by the applicable standard of review and (2) that the board improperly concluded that (a) at the time of her injury, she was not doing

something incidental to her employment and for the benefit of the defendant, (b) her home was not tantamount to a satellite office of the defendant and (c) the defendant is not responsible for her injury due to her employment with another home health care agency." Id., 221. The Appellate Court concluded that the board had applied the proper standard of review, but had reached an incorrect result with respect to compensability of the injury. Id., 227. That court determined that the plaintiff's injury was compensable because the injury had occurred while the plaintiff was engaged in an activity integral to her employment. Id., 236. The Appellate Court, therefore, declined to reach the plaintiff's remaining two claims,[3] and reversed the decision of the board. Id. This certified appeal followed.

On appeal, the defendant claims that the Appellate Court improperly concluded that the plaintiff's injury was compensable because it did not arise out of and occur in the course of her employment. Specifically, the defendant contends that compensation is barred by the coming and going rule because the injury occurred while the plaintiff was en route to her first patient of the day, and: (1) it does not fit within any of the recognized exceptions to the coming and going rule; and (2) it does not satisfy the benefits test. Additionally, the defendant claims that the judgment of the Appellate Court is contrary to public policy. In response, the plaintiff contends that the Appellate Court's judgment was proper because travel was an integral part of her job and her injury falls within several of the exceptions to the coming and going rule that relate to employer mandated travel on public highways. We agree with the plaintiff.

---

[3] The Appellate Court explained that it "need not determine whether the plaintiff's apartment was a satellite office of the defendant or whether the plaintiff's performing some of her duties for Atrium was a substantial deviation from the duties she owed the defendant . . . [because] [t]hose issues are not relevant to our analysis." *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, supra, 84 Conn. App. 231 n.6.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . Where [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Citations omitted; internal quotation marks omitted.) *Fimiani* v. *Star Gallo Distributors, Inc.*, 248 Conn. 635, 641–42, 729 A.2d 212 (1999).

I

WHETHER THE PLAINTIFF SATISFIES THE TWO PART STATUTORY TEST FOR THE AWARD OF WORKERS' COMPENSATION BENEFITS

"It is an axiom of [workers'] compensation law that awards are determined by a two-part test. The [claimant] has the burden of proving that the injury claimed [1] arose out of the employment and [2] occurred in the course of the employment." (Internal quotation marks omitted.) *Kolomiets* v. *Syncor International Corp.*, 252 Conn. 261, 266, 746 A.2d 743 (2000). The two part test is based on General Statutes § 31-275, which provides in relevant part: "(1) 'Arising out of and in the course of his employment' means an accidental injury happen-

ing to an employee or an occupational disease of an employee originating while the employee has been engaged in the line of the employee's duty in the business or affairs of the employer upon the employer's premises, or while engaged elsewhere upon the employer's business or affairs by the direction, express or implied, of the employer, provided . . . (E) A personal injury shall not be deemed to arise out of the employment if the injury is sustained: (i) At the employee's place of abode, and (ii) while the employee is engaged in a preliminary act or acts in preparation for work unless such act or acts are undertaken at the express direction or request of the employer . . . ."

"An injury is said to arise out of the employment when (a) it occurs in the course of the employment and (b) is the result of a risk involved in the employment or incident to it or to the conditions under which it is required to be performed." *Dombach* v. *Olkon Corp.*, supra, 163 Conn. 221–22. "Our cases have held that an injury [occurs] in the course of the employment when it takes place (a) within the period of the employment, (b) at a place where the employee may reasonably be and (c) while he is reasonably fulfilling the duties of the employment or doing something incidental to it." Id., 221. "There must be a conjunction of [these] two requirements [of the test] . . . to permit compensation. . . . The former requirement [of arising out of the employment] relates to the origin and cause of the accident, while the latter requirement [of occurring in the course of employment] relates to the time, place and [circumstance] of the accident." (Internal quotation marks omitted.) *Kish* v. *Nursing & Home Care, Inc.*, 248 Conn. 379, 382, 727 A.2d 1253 (1999).

The axiom commonly known as the "coming and going" rule fits into this rubric. "An injury sustained on a public highway while going to or from work is ordinarily not compensable. A principal reason for this

rule is that employment ordinarily does not commence until the claimant has reached the employer's premises, and consequently an injury sustained prior to that time would ordinarily not occur in the course of the employment so as to be compensable. Furthermore, in cases falling within the ordinary rule, the employee's means of transportation, as well as his route are entirely within his discretion, unfettered by any control or power of control on the part of the employer. . . . There are [however] a number of exceptions to the ordinary rule, four of which are pointed out in [*Lake* v. *Bridgeport*, supra, 102 Conn. 343]: (1) [i]f the work requires the employee to travel on the highways; (2) where the employer contracts to furnish or does furnish transportation to and from work; (3) where, by the terms of his employment, the employee is subject to emergency calls and (4) where the employee is injured while using the highway in doing something incidental to his regular employment, for the joint benefit of himself and his employer, with the knowledge and approval of the employer." (Citation omitted.) *Dombach* v. *Olkon Corp.*, supra, 163 Conn. 222. Exceptions one and four are controlling in the present case.

We now turn to the defendant's first claim that the plaintiff's injury fails to satisfy the workers' compensation two part test because: (1) the plaintiff is not a traveling employee within the meaning of the first exception to the coming and going rule; (2) the plaintiff does not satisfy the benefits test; and (3) the plaintiff's injury was not due to a unique risk of her employment.

A

Whether the Plaintiff's Injury Occurred in the Course of Her Employment

The crux of the present appeal, as identified by the defendant, is whether the plaintiff's injury meets the statutory requirement of having occurred in the course

of her employment. As previously stated, this requires the injury to have taken place "(a) within the period of the employment, (b) at a place where [she] may reasonably [have been] and (c) while [she was] reasonably fulfilling the duties of the employment or doing something incidental to it." Id., 221. This broader question distills to two more specific issues under the relevant exceptions to the coming and going rule, namely, whether: (1) a home health care worker's travel to a patient's home at the beginning of her workday is part of her "period of employment";[4] and (2) a home health care worker's travel to a patient's home at the beginning of her workday confers a benefit on her employer. The defendant first contends that the plaintiff's injury did not occur in the course of her employment because, under this court's prior decisions, home health care workers are not "traveling employees" for the purposes of workers' compensation. This is an issue of first impression for this court. We disagree with the defendant.

1

### The Traveling Employee Exception to the Coming and Going Rule

We begin with a discussion of the traveling employee exception. Injuries that occur during travel in such cases wherein travel is an integral part of the claimant's employment occur during the "period of employment" and not merely during a preparatory phase, for which compensation is statutorily proscribed. The traveling employee exception "arise[s] in situations where the contract of employment itself involves, in its actual

---

[4] Put differently, the question is whether travel to the home of the plaintiff's first patient of the day is itself an integral *part* of her employment so as to place the injury within the period of her employment, or whether it is merely a preparatory commute to work, indistinguishable, as the defendant alleges, from the commute of other workers to their respective offices or workplaces.

performance, or as an incident annexed to it with the knowledge and consent of the employer, the use of the public highways." *McKiernan* v. *New Haven*, 151 Conn. 496, 499, 199 A.2d 695 (1964). "It is well-settled law that traveling men are generally within the course of their employment from the time they leave home on a business trip until they return, for the self-evident reason that traveling itself is a large part of the job." (Internal quotation marks omitted.) *Olsten Kimberly Quality Care* v. *Pettey*, 328 Ark. 381, 386, 944 S.W.2d 524 (1997), quoting 1 A. Larson, Workmen's Compensation (1996) § 16.01. Although there are no Connecticut appellate cases directly on point, this court's application of the traveling employee exception to other professions is illustrative. See *Dombach* v. *Olkon Corp.*, supra, 163 Conn. 223 (reversing commissioner's denial of workers' compensation benefits for serviceman injured while driving to home of friend for weekend en route to job site to which he was supposed to report two days later); see also *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 312, 97 A. 320 (1916) (frostbite-related death of traveling insurance salesman compensable). In both instances, we judged compensable injuries sustained in travel to and from various job sites because travel was an essential part of the service that these employees provided.

Similarly, in the present case, *in-home* care is an essential and inescapable part of the health service that the plaintiff provided to her patients. She is no different than the serviceman in *Dombach*, who provided his engineering expertise at various work sites. Like the serviceman in *Dombach*, travel is part and parcel of her work.[5] Although, as the defendant points out, the

---

[5] The plaintiff's "commute" is distinguishable from that of most other workers because it is an inherent part of the service that she provides. She provides *home* health care, which is undoubtedly purchased by some patients because of the home component. By contrast, the nature of the service provided by a judge, for example, has nothing to do with travel, notwithstanding the fact that he or she might work out of different offices on different

plaintiff is not reimbursed by her employer for her travel expenses other than those incurred while in between the first and last patients of the day, "[t]he fact that the employee is not paid for his travel time does not mean that the trip was not in the course of employment." (Internal quotation marks omitted.) *Olsten Kimberly Quality Care* v. *Pettey*, supra, 328 Ark. 386, quoting 1 A. Larson, supra, § 16.23. "Payment for time is only one of the evidences that the journey itself was part of the service." (Internal quotation marks omitted.) *Olsten Kimberly Quality Care* v. *Pettey*, supra, 386, quoting 1 A. Larson, supra, § 16.23; accord *Lake* v. *Bridgeport*, supra, 102 Conn. 343 ("It may be that his work requires him to travel on the highways. . . . *Or* that the employer contracts to furnish and does furnish transportation to or from the work." [Citations omitted; emphasis added.]); *Larke* v. *Hancock Mutual Life Ins. Co.*, supra, 90 Conn. 308 ("[t]he period of employment has sometimes been held to cover a period other than that for which wages are paid").

We disagree with the defendant's contention that the plaintiff's injury is not compensable because the defendant lacks control over her whereabouts as she travels to the home of her first patient of the day. This court has held compensable injuries arising from travel over which employers had little control.[6] See *Kish* v. *Nurs-*

---

days or even parts of a day. This is a fundamental distinction that merits differing treatment.

[6] In cases wherein the journey is part of the employee's service, we note that compensability easily can be determined by the principle of deviation, which already commonly is used for evaluating the compensability of injuries arising from travel during the workday. In *Kolomiets* v. *Syncor International Corp.*, supra, 252 Conn. 274, this court held compensable an injury sustained by a delivery person who, while returning to headquarters after a delivery, passed the office and went home instead in order to pick up his wallet. We concluded that the injury was compensable because the employee's journey home, during which he was injured, constituted an insubstantial deviation from his route. Id. Although the delivery person in *Kolomiets* had employer *recommended* routes to take when delivering items, these were subject to change by the drivers; id., 263; the employer, therefore, did not have control

*ing & Home Care, Inc.*, supra, 248 Conn. 381 (injury suffered by home health care worker explicitly ordered not to pick up equipment for patient while crossing street to mail postcard en route to picking up equipment was compensable). We, therefore, conclude that home health care workers are "traveling employees" for the purposes of workers' compensation,[7] and that this conclusion is consistent with the letter and spirit of § 31-275 as well as our state's jurisprudence.[8]

## 2

### The Benefits Test

The defendant also claims that the plaintiff fails to satisfy the "course of employment" requirement that

over the employees' journeys. A similar analysis to determine compensability can be performed for traveling employees, who like the plaintiff in the present case, are injured on their way going to or returning from their first and last assignments of the day.

[7] In support of its contention that the plaintiff's injury is not compensable, the defendant, nevertheless, points out several notable exceptions to the coming and going rule for specific categories of traveling employees, such as: (1) emergency workers; see *Lake* v. *Bridgeport*, supra, 102 Conn. 345 (injury sustained by special policeman while en route to reporting for duty was compensable because obeying order to report to station was in performance of employment duty); and (2) workers traveling between offices; see *Tovish* v. *Gerber Electronics*, 32 Conn. App. 595, 605, 630 A.2d 136 (1993), appeal dismissed, 229 Conn. 587, 642 A.2d 721 (1994) (heart attack suffered by traveling salesman while shoveling snow in his driveway compensable because his home was satellite office and he had already begun workday); which are clearly inapplicable to the plaintiff in the present appeal. We note, however, that the plaintiff is not challenging, nor are we questioning, the fact that she does not fit into *certain* of the recognized categories of traveling employees for which we have allowed compensation in the past. The only relevant question is whether the travel requirement of the plaintiff's employment as a home health care worker in the present appeal is a part of the service that she provides. We have answered this question in the affirmative.

[8] In light of this conclusion, we need not consider the plaintiff's alternate claim that she also fits within the exception to the coming and going rule for employees who are "injured while using the highway in doing something incidental to [their] regular employment, for the joint benefit of [themselves and their] employer, with the knowledge and approval of the employer." *Dombach* v. *Olkon Corp.*, supra, 163 Conn. 222.

an injury occur "while the employee is . . . doing something incidental to [the employment]." *McNamara* v. *Hamden*, 176 Conn. 547, 550–51, 398 A.2d 1161 (1979). This court previously has interpreted that requirement to mean that, "in . . . going and coming cases, it is necessary for the commissioner to find a *benefit* to the employer before compensation will be awarded." (Emphasis added.) Id., 552. The defendant's primary contention is that, merely commuting to work fails to satisfy the benefits test and the plaintiff's commute to the home of her first patient of the day is indistinguishable from the commute of any other working person. We disagree.

The purpose of this benefits test is "to make up for the fact that employees going to or coming from work [ordinarily] do not satisfy both of the first two course-of-employment requirements, place and period of employment." (Internal quotation marks omitted.) *Spatafore* v. *Yale University*, 239 Conn. 408, 421, 684 A.2d 1155 (1996). In the present case, however, the plaintiff *has* satisfied the place and period of employment requirements because, as we already have concluded, travel was an integral part of her employment and service. Moreover, *McKiernan* v. *New Haven*, supra, 151 Conn. 500, upon which the defendant relies for support for its contention that "show[ing] up for work . . . is not sufficient to bring travel to and from work within the requirements of the [benefits test]," is inapposite and was superseded by Public Acts 1969, No. 289, which amended § 31-275. See *McKiernan* v. *New Haven*, supra, 500 (injury suffered by police officer while en route to station not compensable because not performing obligation of employment).[9] Public Acts

[9] The holding in *McKiernan* has since been superseded by § 31-275 (1) (A) (i), which provides in relevant part: "For a police officer or firefighter, 'in the course of his employment' encompasses such individual's departure from such individual's place of abode to duty, such individual's duty, and the return to such individual's place of abode after duty . . . ."

1969, No. 289, reflects the legislative judgment that travel *can* be an integral part of employment, as we have concluded it is in the present case. The amendment goes even further, however, to provide police officers and firefighters with portal-to-portal coverage,[10] in recognition of their unique position among traveling employees.[11] As we have already addressed the defendant's second claim that the plaintiff's travel to the homes of patients is indistinguishable from the commute of all other workers, we conclude that the plaintiff

[10] Contrary to the defendant's contentions, the Appellate Court did not conclude that the plaintiff was entitled to portal-to-portal coverage. Although the Appellate Court adopted the *reasoning* of *Olsten Kimberly Quality Care* v. *Pettey*, supra, 328 Ark. 383; see *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, supra, 84 Conn. App. 233; it never made mention of portal-to-portal coverage, and the facts of the present case, wherein the plaintiff was injured while crossing a public highway and not while she was descending her private driveway, do not support such an expansion. As there was no judicial attempt by the Appellate Court to extend the plaintiff's zone of compensation beyond the moment that she began her required journey on public highways, we need not address the defendant's additional claim that providing for portal-to-portal coverage is a legislative prerogative, other than to mention that interpreting the extent of compensation provided for by § 31-275 is well within the boundaries of acceptable judicial activity.

[11] The amendment of Public Acts 1969, No. 289, is limited to police officers and firefighters and allows them to qualify for workers' compensation benefits without having to satisfy the two part test and affording them more extensive, portal-to-portal coverage. It is important to note that the amendment was premised on a recognition of their unique job functions; see 13 S. Proc., Pt. 4, 1969 Sess., p. 1703, remarks of Senator Raymond C. Lyddy ("[a]ctually, this [bill] includes now, Firemen and Policemen in the definition of for workman's compensation purposes from their home to home again, because these people are on duty [twenty-four] hours"); and is not a legislative determination that they are the only traveling employees. Section 31-275 (1) (A) (i) does not, therefore, alter the status of other workers, like deliverymen, whom this court since has determined to be traveling employees because cases so holding, of which the legislature is presumed to be aware, have not engendered a legislative response. See, e.g., *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 783, 739 A.2d 238 (1999) "[t]he legislature is presumed to be aware of the interpretation of a statute and . . . its subsequent nonaction may be understood as a validation of that interpretation" [internal quotation marks omitted]).

satisfies the benefits test. Accordingly, the plaintiff also satisfies the "in the course of employment" prong of the statutory two part test for workers' compensation.

Moreover, our conclusion is consistent with the reasoning of several sister state courts that have addressed the status of home health care workers vis-á-vis the coming and going rule. In *Olsten Kimberly Quality Care* v. *Pettey*, 55 Ark. App. 343, 346, 934 S.W.2d 956 (1996), the case upon which the Appellate Court relied in *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, supra, 84 Conn. App. 235, for example, the Arkansas Court of Appeals held that an injury sustained by a traveling nurse, who provided her own transportation at her own cost, while en route to her first patient of the day was compensable because "[i]t [wa]s . . . clear that delivering nursing services to patients at their homes is the raison d'etre of the [employer's] business, and that traveling to patients' homes is an essential component of that service."[12] In *Peterson* v. *Workmen's*

---

[12] The defendant contends that Arkansas courts have since been reluctant to embrace the holding in *Olsten Kimberly Quality Care*, and cites as evidence, *Daniels* v. *Arkansas Dept. of Human Services*, 77 Ark. App. 99, 101, 72 S.W.3d 128 (2002) (injury sustained by social services aide charged with transporting foster children while returning to office after stopping home for lunch during her lunch hour was not compensable because "she was not performing employment services at the time of the accident"). We disagree, however, with the defendant's broad reading of *Daniels* as a repudiation of *Olsten Kimberly Quality Care*. Indeed, the *Daniels* court recognized *Olsten* in its opinion, and proceeded to distinguish it from *Daniels* on the facts. See id., 102–103 ("[I]n *Olsten Kimberly Quality Care* v. *Pettey*, supra, [328 Ark. 389] the court applied the 'traveling men' exception where the employee's journey is considered part of the service . . . . In the [*Daniels*] case at bar, the appellant was not engaged in the service of transporting clients when the accident occurred . . . . She was thus not engaged in work-related travel." [Citations omitted.]). In *Daniels*, which is an Appellate Court case, the plaintiff was injured while traveling alone in her vehicle during her lunch period after she had signed out for lunch. *Daniels* v. *Arkansas Dept. of Human Services*, supra, 102–103. Moreover, she was not injured on her way to a child's home, but while traveling to a central office location for the purposes of resuming her work upon arrival at the office. Id., 103. The facts of the present case are, therefore, much more akin to those of *Olsten Kimberly Quality Care* than *Daniels*.

*Compensation Appeal Board,* 528 Pa. 279, 287–88, 597 A.2d 1116 (1991), an injury sustained by a home health care worker employed on a temporary basis while en route to her assignment of the day was held compensable because she did not have a fixed place of employment and, therefore, fit within an exception to the coming and going rule. But see *Moss* v. *Conrad,* 157 Ohio App. 3d 47, 52, 809 N.E.2d 36 (2004) (injury sustained by home health care worker on way to first patient of day for particular employer not compensable because patient's home constituted fixed site of employment). Although we acknowledge the limitations of making interstate comparisons with respect to this issue in light of the variable wording of workers' compensation statutes and the various exceptions to the coming and going rule, the reasoning of sister state courts nevertheless is relevant and lends support to our conclusion in the present case.

B

### Whether the Plaintiff's Injury Arose Out of Her Employment

The defendant also claims that the plaintiff failed to satisfy the first prong of the two part statutory test, which requires the plaintiff to prove that her injury arose out of her employment, because, the defendant contends, the injury was not due to a unique risk of her employment as a home health care worker. We disagree.

"An injury which occurs in the course of the employment will ordinarily [also] arise out of the employment; but not necessarily so, for the injury might occur out of an act or omission for the exclusive benefit of the employee, or of another than the master, while the employee is engaged in the course of his employment. . . . Speaking generally, an injury arises out of an employment when it occurs in the course of the employment *and* as a *proximate cause* of it. [Therefore] [a]n

injury which is a natural and necessary incident or consequence of the employment, though not foreseen or expected, arises out of it. . . . An injury of this description is one of the risks of the employment, for it is due to it and arises from it, either directly, or as incident to it, or to the conditions and exposure surrounding it. And the proximate cause of the injury is not necessarily that which immediately arises out of the employment, but may be that which is *reasonably incidental* to it." (Citations omitted; emphasis added; internal quotation marks omitted.) *Larke* v. *Hancock Mutual Life Ins. Co.*, supra, 90 Conn. 309–10.

As the defendant suggests, conditions that arise out of employment are "peculiar to [it], and not such exposures as the ordinary person is subjected to. It is therefore immaterial where the exposure originates, whether from the employment, or outside of it." Id., 310. We must be able "to trace [the] resultant personal injury to a proximate cause set in motion by the employment . . . ." *Kolomiets* v. *Syncor International Corp.*, supra, 252 Conn. 272. In the present case, that cause was travel to the patients' homes necessitated by the plaintiff's employment as a *home* health care worker.

In *Larke* v. *Hancock Mutual Life Ins. Co.*, supra, 90 Conn. 310, we concluded that an insurance salesman's death from a complication of frostbite that he had sustained while traveling to various houses to solicit insurance and collect premiums arose out of his employment and was compensable because, in comparison to workers in general, his employment necessitated a greater exposure to the natural elements causing frostbite, and the injury resulted therefrom. Similarly, in *Kolomiets* v. *Syncor International Corp.*, supra, 252 Conn. 274, we determined that the injury of a deliveryman, who had deviated from his usual route in order to pick up his driver's license, arose out of his employment and

was compensable because the injury occurred while fulfilling one of the essential duties of his job.

Similarly, the plaintiff in the present case was injured while performing one of the essential functions of her employment, namely, bringing health care to patients' homes. This essential function necessitated a greater exposure by the plaintiff to the hazards of public highway travel than that suffered by the average worker, and her injury, therefore, was a natural, foreseeable consequence of her employment as a home health care worker. Travel was as integral to the plaintiff's job as it was to the insurance representative in *Larke* v. *Hancock Mutual Life Ins. Co.*, supra, 90 Conn. 308–309. Accordingly, we conclude that the plaintiff's injury did, in fact, arise out of her employment, thereby satisfying the statutory test for workers' compensation.

## II

## WHETHER THE JUDGMENT OF THE APPELLATE COURT IS CONTRARY TO PUBLIC POLICY

Addressing the possible public policy ramifications of our decision in the present appeal, the defendant claims that affirming the judgment of the Appellate Court will: (1) make Connecticut unattractive to business; (2) render the application of workers' compensation laws unpredictable; and (3) encourage employers to require daily reporting by home health care workers to a central office location at the beginning and end of each workday's home visits. We disagree.

It is important to recognize that our decision today is a very narrow one. It does not abrogate the coming and going rule; it simply concludes that home health care workers like the plaintiff fit into the existing exception for "traveling employees." Despite the defendant's concerns about the impact that our decision might have on employers' costs of doing business, we are unper-

suaded that our narrow holding will lead to any significant increases. To the contrary, it may ultimately reduce costs by giving employers a defined precedent from which to plan. Even presuming some minimal negative impact on home health care businesses, this court, while sensitive to this possibility, cannot base our judgment on this fact if doing so comes at the expense of following the law.

We likewise disagree with the defendant's claim that affirming the Appellate Court's judgment will render the application of workers' compensation laws unpredictable. Indeed, we believe that it will have the opposite effect. Our decision today does not contradict existing workers' compensation law; it is an issue of first impression that is resolved within the framework of the fact based requirements and exceptions already in existence. By lending a degree of much needed clarification to the scope of the traveling employee exception, our decision herein will, if anything, aid predictability rather than work against it.

Finally, although the defendant has made much about the possibility of employers, in an effort to limit their exposure, hereafter requiring home health care workers to report to a central office location prior to and after seeing patients each workday, this is an unlikely prediction. In fact, it is pure speculation, as the defendant has failed to provide any empirical evidence whatsoever to support this claim. Assuming, as we do, that employers generally are motivated by the best interests of their businesses, if an employee's commute to the home of her first patient of the day is shorter than her commute from a central office to that same location, it would not make good business sense for an employer to require that employee to check in first at the central office because the employer is exposing the business to a larger window of potential liability. Imposing such a requirement also likely would be costly for the busi-

ness by taking time away from patient care. The decision about whether to require central reporting is, therefore, likely to be an individual one, based upon an assessment of the risks and benefits of each business, and not a change of the magnitude that the defendant predicts.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.