ROSE LABADIE *v.* NORWALK REHABILITATION
SERVICES, INC., ET AL.
(AC 24353)

Foti, Dranginis and DiPentima, Js.

Argued April 1—officially released August 3, 2004

*Gregory S. Kimmel,* for the appellant (plaintiff).

*Cynthia J. Coccomo,* for the appellees (defendants).

*Opinion*

DRANGINIS, J. The issue in this workers' compensation appeal is whether a home health care worker whose employer required her to travel to the homes of its clients sustained a compensable injury when she was struck by a motor vehicle as she crossed a street en route to her first assignment of the day. We conclude that because travel was indispensable to the service provided by the home health care employer, the plaintiff's injury was compensable. We reverse the decision of the workers' compensation review board (board).

The plaintiff, Rose Labadie, a certified nursing assistant-home health care worker employed by the defendant Norwalk Rehabilitation Services, Inc.,[1] appeals from the decision of the board that reversed the finding and award of the workers' compensation commissioner (commissioner). On appeal, the plaintiff claims (1) that the board failed to abide by the applicable standard of review and (2) that the board improperly concluded that (a) at the time of her injury, she was not doing something incidental to her employment and for the benefit of the defendant, (b) her home was not tantamount to a satellite office of the defendant and (c) the defendant is not responsible for her injury due to her employment with another home health care agency.

The parties submitted the following stipulated facts to the commissioner, relevant to the date in question.

---

[1] The CNA Insurance Company also is a defendant. Because the liability of CNA Insurance Company is contingent on the liability of Norwalk Rehabilitation Services, Inc., we refer in this opinion to Norwalk Rehabilitation Services, Inc., as the defendant.

The plaintiff resided in an apartment building at 300 Tresser Boulevard in Stamford and was employed as a certified nursing assistant-home health care worker by both the defendant and Atrium Homecare (Atrium). Both of her employers required the plaintiff to perform her duties in the homes of their clients. The plaintiff does not hold a Connecticut motor vehicle operator's license and routinely took a bus to the homes of the people to whom she provided health care services for the defendant. The defendant reimbursed the plaintiff for the bus fare she paid to travel from the home of one of its clients to another, but it did not reimburse the fare she paid to travel from her home to the day's first assignment or from the day's last assignment back home.

From 7 to 9 a.m. on February 18, 1998, the plaintiff performed health care services for one of Atrium's clients, who happened to reside in the plaintiff's apartment building. At 9 a.m., she left 300 Tresser Boulevard and walked to a bus stop where she boarded a bus to travel to the home of one of the defendant's clients on Knickerbocker Avenue in Stamford. The client on Knickerbocker Avenue was the first client of the day for whom the plaintiff was scheduled to provide the defendant's services. She alighted from the bus on Hope Street and, as she crossed that street, was struck by a motor vehicle. As a result of the accident, the plaintiff sustained serious injuries to her arms and leg.

The plaintiff filed a claim pursuant to the Workers' Compensation Act (act), General Statutes § 31-275 et seq., seeking benefits afforded by the act. She named the defendant as the respondent. The defendant filed a form 43 denying the plaintiff's claim on the ground that the plaintiff was not injured during the course of her employment.

In his finding and award, the commissioner adopted the parties' stipulation of facts and also found, on the

basis of the plaintiff's deposition testimony, that she rarely went to the defendant's place of business in Norwalk and that she received her assignments via telephone at her Tresser Boulevard home, where she also completed paperwork and received her paychecks. She filed her reports by mail. The commissioner concluded that the plaintiff's home was tantamount to a satellite office of the defendant. The plaintiff was required to use the public highways to attend to her duties for the defendant, which was for the defendant's benefit. The commissioner also found that it was unclear whether the plaintiff was reimbursed for her travel from 300 Tresser Boulevard to the home of the defendant's first client of the day. The commissioner concluded that the plaintiff was injured in the course of her employment and that she had sustained a compensable injury.

The defendant filed a motion to correct the commissioner's finding, asking the commissioner to delete his finding that the plaintiff's home was tantamount to a satellite office and that it was unclear that the defendant reimbursed the plaintiff for travel to the first appointment of the day. The defendant also asked the commissioner to dismiss the claim because the plaintiff failed to demonstrate that she had sustained a compensable injury. The commissioner denied the motion to correct. The defendant appealed to the board, asserting that the commissioner improperly denied the motion to correct and that the award was contrary to the board's existing decisions.

In an opinion dated June 21, 2001, the board sustained the defendant's appeal, concluding, among other things, that the commissioner had applied improperly the "coming and going rule"; see *Lake* v. *Bridgeport*, 102 Conn. 337, 342–43, 128 A. 782 (1925); and the "benefit test"; id., 343; to the facts of this case. It remanded the case to the commissioner, however, with direction to conduct further proceedings to determine whether the

plaintiff's home was a satellite office and to consider the legal significance of the plaintiff's having cared for one of Atrium's clients prior to setting out for the defendant's client on Knickerbocker Avenue.

On remand, the commissioner addressed the three indicia of an established home workplace cited in the board's decision. See 1 A. Larson & L. Larson, Workers' Compensation Law (2000) § 16.10 [2], p. 16-27. The commissioner found that regardless of whether the plaintiff performed duties for the defendant at her home, the amount of time she spent doing it was about fifteen minutes a month, which was not a substantial quantity of time. The plaintiff kept no employment related equipment in her apartment, save a telephone. The commissioner was unable to determine whether there were special circumstances of employment that made it necessary, rather than personally convenient, for the plaintiff to complete some of her duties in her apartment.

As to the legal consequences of the plaintiff's having performed services for Atrium after leaving her apartment but prior to her leaving the apartment building, the commissioner found that the question concerned the parameters of his use of the term premises. He found that the plaintiff had not left the premises until she left the curb or lot line of 300 Tresser Boulevard. The commissioner thus concluded that the plaintiff had not deviated from her employment with the defendant.

The commissioner also determined that the defendant did not reimburse the plaintiff for travel to and from her home, only for travel between the homes of its clients, which implied that the plaintiff was not in the course of her employment when she was traveling to her first appointment for the defendant. With regard to the "coming and going rule" and the "benefit test," the commissioner concluded that because he had determined that the plaintiff's apartment was a satellite

office, the rule and test did not apply. The defendant again filed a motion to correct, which the commissioner denied.

The defendant once more appealed to the board, essentially claiming that the plaintiff's home was not a satellite office and that 300 Tresser Boulevard was not part of the premises of the satellite office, if one existed. The defendant further argued that the plaintiff's tending to the needs of the Atrium patient before departing for Knickerbocker Avenue was a deviation from her employment with the defendant. The board concluded, in an opinion dated June 3, 2003, that there was insufficient evidence to support the commissioner's finding that the defendant maintained a satellite office in the plaintiff's home or that the plaintiff had begun her workday for the defendant at the time she was injured. Accordingly, the board reversed the finding and award of the commissioner.

I

The plaintiff's first claim is that the board overstepped its authority with respect to the standard of review that applies to the board's review of a commissioner's findings and award. The plaintiff claims that the board is bound by the clearly erroneous standard when reviewing a finding and award issued by the commissioner. The defendant argues that the board's review is plenary because no Connecticut court has defined the parameters for extending an employer's premises to encompass an employee's residence. The standard of review that applies to the circumstances of this case was articulated by our Supreme Court in *Spatafore* v. *Yale University*, 239 Conn. 408, 417–20, 684 A.2d 1155 (1996).

"It is well settled that, because the purpose of the act is to compensate employees for injuries without fault by imposing a form of strict liability on employers,

to recover for an injury under the act a plaintiff must prove that the injury is causally connected to the employment. To establish a causal connection, a plaintiff must demonstrate that the claimed injury (1) arose out of the employment, and (2) in the course of the employment." (Internal quotation marks omitted.) Id., 417–18.

"The determination of whether an injury arose out of and in the course of employment is a question of fact for the commissioner. . . . A party aggrieved by a commissioner's decision to grant or deny an award may appeal to the board pursuant to [General Statutes § 31-301] . . . ." (Citation omitted.) *Spatafore* v. *Yale University*, supra, 239 Conn. 418.

"[T]he [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [The board] is obliged to hear the appeal on the record and not retry the facts. . . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . .

"To the extent that we have articulated a standard for reviewing a determination by a commissioner that an injury arose out of the employment, we have treated this issue as factual in nature and, therefore, have accorded the commissioner's conclusion the same deference as that given to similar conclusions of a trial judge or jury on the issue of proximate cause. A finding of a fact of this character [whether the injury arose out of the employment] is the finding of a primary fact." (Citation omitted; internal quotation marks omitted.) Id., 419.

The issue here is the one argued by the parties in *Spatafore*: "The plaintiff argues that, although the board acknowledged its limited scope of review, it nevertheless disregarded the substantial body of evidence supporting the commissioner's award. In response, the defendant argues that the board did not find new facts or disregard the evidence supporting the plaintiff's claim. The defendant claims, rather, that the board determined that the conclusions the commissioner had made, [on the basis of] the facts he properly had found, were not reasonably sound." Id., 420. Our Supreme Court agreed with the defendant in *Spatafore*. Id. We agree with the defendant in this case.

Having identified the appropriate standard of review, which resolves the plaintiff's first claim, we now turn our attention to the plaintiff's other claims.

II

The plaintiff claims that the board improperly concluded that at the time she was injured, she was not doing something incidental to her employment and for the benefit of the defendant.[2] We agree with the plaintiff that at the time of her injury she was engaged in an activity that was integral to her employment, as travel was a substantial part of the service the defendant provided to its clients, i.e., *home* health care services.

"The purpose of the [workers'] compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer." (Internal quotation marks omitted.) *Dow-*

---

[2] At oral argument before this court, the plaintiff withdrew her claim that at the time that she was injured, she was doing something for the benefit of the defendant. On the basis of our plenary review, we conclude that at the time she was injured, the plaintiff was not only engaged in an activity that was beneficial to the defendant, but also in one that was the essence of the defendant's services.

*ling* v. *Slotnik*, 244 Conn. 781, 799, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998). "A commissioner may exercise jurisdiction to hear a claim only under the precise circumstances and in the manner particularly prescribed by the enabling legislation." (Internal quotation marks omitted.) Id. "The [act] is not triggered by a claimant until he brings himself within its statutory ambit. . . . Although the [act] should be broadly construed to accomplish its humanitarian purpose . . . its remedial purpose cannot transcend its statutorily defined jurisdictional boundaries." (Citations omitted; internal quotation marks omitted.) Id., 800.

"In order to establish that [the] injury occurred in the course of employment, the claimant has the burden of proving that the accident giving rise to the injury took place (a) within the period of the employment; (b) at a place [the employee] may reasonably [have been]; and (c) while [the employee was] reasonably fulfilling the duties of the employment or doing something incidental to it." (Internal quotation marks omitted.) *Antignani* v. *Britt Airways, Inc.*, 58 Conn. App. 109, 114, 753 A.2d 366, cert. denied, 254 Conn. 911, 759 A.2d 504 (2000); see also General Statutes § 31-275 (1).[3] "An injury is said to arise out of the employment when (a) it occurs in the course of the employment and (b) is the result of a *risk involved in the employment* or

___

[3] General Statutes § 31-275 provides in relevant part "(1) 'Arising out of and in the course of his employment' means an accidental injury happening to an employee . . . originating while the employee has been engaged in the line of the employee's duty in the business or affairs of the employer upon the employer's premises, or *while engaged elsewhere upon the employer's business or affairs by the direction, express or implied, of the employer* . . . (E) A personal injury shall not be deemed to arise out of the employment if the injury is sustained: (i) At the employee's place of abode, and (ii) while the employee is engaged in a *preliminary act* or acts in preparation for work unless such *act or acts are undertaken at the express direction or request of the employer* . . . ." (Emphasis added.)

incident to it or to the *conditions under which it is required to be performed.*" (Emphasis added.) *Dombach* v. *Olkon Corp.*, 163 Conn. 216, 221–22, 302 A.2d 270 (1972).

Ordinarily, an injury sustained by an employee on a public highway while the employee is going to or coming home from work is not compensable. Id., 222. "A principal reason for this rule is that employment ordinarily does not commence until the claimant has reached the employer's premises, and consequently an injury sustained prior to that time would ordinarily not occur in the course of the employment so as to be compensable. Furthermore, in cases falling within the ordinary rule, the employee's means of transportation, as well as his route are entirely within his discretion, unfettered by any control or power of control on the part of the employer." Id.; see also *Lake* v. *Bridgeport*, supra, 102 Conn. 342–44.

A number of exceptions, however, exist to the coming and going rule. Those exceptions are: "(1) [i]f the work requires the employee to travel on the highways; (2) where the employer contracts to furnish or does furnish transportation to and from work; (3) where, by the terms of his employment, the employee is subject to emergency calls and (4) where the employee is injured while using the highway in doing something incidental to his regular employment, for the joint benefit of himself and his employer, with the knowledge and approval of the employer." *Dombach* v. *Olkon Corp.*, supra, 163 Conn. 222.

As we considered this appeal, we surveyed cases in this jurisdiction involving travel in which the coming and going rule, or its exceptions, or another rule were determinative. The facts of those cases or the rule or exception that was applied are not on point with the case before us now. See, e.g., *Kish* v. *Nursing & Home*

*Care, Inc.*, 248 Conn. 379, 727 A.2d 1253 (1999) (home health care nurse struck crossing street to post personal letter while en route to secure medical equipment for client sustained compensable injury; although errand contrary to employer's directive, it involved ultimate work of employer and posting letter was minor deviation); *Spatafore* v. *Yale University*, supra, 239 Conn. 408 (injury sustained by employee while returning from lunch break not in course of employment); *McNamara* v. *Hamden*, 176 Conn. 547, 398 A.2d 1161 (1979) (employee sustained compensable injury while playing Ping-Pong on employer's premises within one-half hour of workday, employer acquiesced in recreational activity as incident to employment); *Dombach* v. *Olkon Corp.*, supra, 163 Conn. 216 (claimant who traveled from place to place for employer suffered compensable injury while driving to home of friend en route to job site, dual purpose doctrine); *Kuharski* v. *Bristol Brass Corp.*, 132 Conn. 563, 46 A.2d 11 (1946) (claimant struck by automobile while crossing street between employer's premises; claim compensable, as highway was special hazard, and he was performing task incidental to employment although workday had not yet begun); *Flodin* v. *Henry & Wright Mfg. Co.*, 131 Conn. 244, 38 A.2d 801 (1944) (fall on sidewalk adjacent to entrance of employer's premises not compensable, as claimant arriving for work was exercising right of general public); *Lake* v. *Bridgeport*, supra, 102 Conn. 337 (police officer struck crossing street when reporting to precinct sustained compensable injury because he was subject to call); *McDonald* v. *Great Atlantic & Pacific Tea Co.*, 95 Conn. 160, 111 A. 65 (1920) (mother of boy who was killed crossing street on errand for employer not entitled to benefits because she did not depend on boy for support); *Luddie* v. *Foremost Ins. Co.*, 5 Conn. App. 193, 497 A.2d 435 (1985) (injury sustained by field claims adjuster not compensable when she took substantial deviation from scope of employment with third party).

One thing that those cases demonstrate, however, is that the risks associated with highway travel are tremendous, including what may be thought of as a simple act, that of crossing a street.[4] See, e.g., *Kish* v. *Nursing & Home Care, Inc.*, supra, 248 Conn. 379; *Kuharski* v. *Bristol Brass Corp.*, supra, 132 Conn. 563; *Lake* v. *Bridgeport*, supra, 102 Conn. 337; *McDonald* v. *Great Atlantic & Pacific Tea Co.*, supra, 95 Conn. 160.

None of the cases cited is on point with the facts at issue here. At oral argument, the parties and this court described the issues in this case as being of a hybrid nature.[5] By concluding that the plaintiff's apartment was a satellite office of the defendant, it appears that the commissioner attempted to resolve the matter by fitting the "square facts" of this case into the "round hole" of the legal exception.[6] On the basis of our review of the record, the briefs of the parties and the law cited therein, however, we conclude that the facts of this case are not so unusual that there is no recognized rule into which they fit. Under the circumstances of her

[4] "The modern tendency is toward a more liberal view as to compensability of injuries resulting from street risks. [Annotation, 51 A.L.R. 509, 514 (1927)]." *Kuharski* v. *Bristol Brass Corp.*, supra, 132 Conn. 567.

[5] In its June 21, 2001 opinion, the board acknowledged that technological advances permit many "white-collar workers" to perform their duties, at least part-time, from home, and that the parameters of a regular home workplace have not been decided by the board or this state's courts. It concluded that the "widespread expansion of job activity beyond the employer's physical premises may require the law to adopt new perspectives regarding the distinction between business and personal time."

Although the board acknowledged the employment trend among white-collar workers, this court takes judicial notice of the class of service providers sometimes referred to as "pink-collar workers," who are typically engaged in low wage, part-time employment. We accept the board's invitation to consider the changes and trends in employment. The legislature, too, may want to take note.

[6] We need not determine whether the plaintiff's apartment was a satellite office of the defendant or whether the plaintiff's performing some of her duties for Atrium was a substantial deviation from the duties she owed the defendant. Those issues are not relevant to our analysis.

employment with the defendant, the plaintiff's travel was a substantial part of the service for which she was employed and, therefore, the injury she sustained on February 18, 1998, was compensable. See 1 A. Larson & L. Larson, supra, § 14 p. 14-1 ("Journey Itself Part of Service").

No one questions that the plaintiff was required to use the public highways to perform her duties of employment for the defendant. It is of no moment that she did not have an operator's license. She lived in Stamford and utilized public transportation to travel to the homes of the defendant's clients. The defendant reimbursed her fare, in part. She was, in fact, injured while she was crossing the street on her way to the defendant's client on Knickerbocker Avenue.

Under somewhat different circumstances, this court and our Supreme Court held that the injury a home health care worker sustained while crossing the street to post a letter while she was traveling to a patient's home was compensable. *Kish* v. *Nursing & Home Care, Inc.*, supra, 248 Conn. 379. The defendant has argued that *Kish* is not controlling because the issue there did not involve the coming and going rule. The defendant is correct; the issue in *Kish* was whether that plaintiff should be compensated when she had undertaken her employment in a manner that violated her employer's policies. Id., 380. *Kish* illustrates, however, that the travel undertaken by a home health care nurse is integral to the nature of that type of employment.

In *Kish*, "the plaintiff (1) was at a place where she was reasonably entitled to be because (2) it was necessary to be where she was in order to fulfill the duties of her employment. The facts in support of this conclusion may be stated briefly. The defendant authorized the plaintiff to drive in the vicinity where she was injured; in fact, the defendant *required* her to do so in the

performance of her duties, and compensated her both for her mileage and for the time that she spent on the road between patients. At the time of her injury, the plaintiff—a professional nurse—was attempting to obtain a medical necessity for a patient who desperately needed it." (Emphasis in original.) Id., 384–85. "The plaintiff's 'ultimate work' consisted of bringing medical care to the homes of patients; this is precisely what she was doing when she was injured." Id., 385. In this case as well, the plaintiff was traveling to the home of one of the defendant's clients to provide home health care services.

"The rule excluding off-premises injuries during the journey to and from work does not apply if the making of that journey, or the special degree of inconvenience or urgency under which it is made, whether or not separately compensated for, is in itself a substantial part of the service for which the worker is employed." 1 A. Larson & L. Larson, supra, § 14, p. 14-1. Within that rule, the Larsons recognize "[t]ravel of Manpower Inc. [t]ype of [w]orker . . . ." Id., § 14.03, p. 14-3. We are persuaded to adopt that rule by the reasoning of the Arkansas appellate courts in a case cited by Larson and both of the parties here. See *Olsten Kimberly Quality Care* v. *Pettey*, 55 Ark. App. 343, 934 S.W.2d 956 (1996), aff'd, 328 Ark. 381, 944 S.W.2d 524 (1997).

In *Olsten Kimberly Quality Care,* the home health care worker traveled to her employer's office to deliver reports and to collect supplies on a regular basis, but she was not required to report to her employer's office each day. *Olsten Kimberly Quality Care* v. *Pettey*, 328 Ark. 381, 383, 944 S.W.2d 524 (1997). The worker used her own vehicle to travel to the homes of her employer's clients and was not compensated for her travel or related expenses. Id. On the date in question, the worker had gone to her employer's office, which was located in a shopping mall, to deliver reports and to obtain

supplies. Id. Before leaving for the home of her first assignment, she visited with a friend and did some window-shopping in the mall. Id. She left the mall en route to the first client of the day and was injured in a one vehicle accident. Id.

The worker sought workers' compensation benefits, which the workers' compensation commission awarded to her. Id. Her employer appealed to the Arkansas Court of Appeals, which upheld the award. The employer then appealed to the Supreme Court of Arkansas, which affirmed the decision of the court of appeals. Id., 382–83. The award was upheld because the courts concluded that travel was necessary to and inherent in the worker's employment. "Delivering nursing services to patients at their homes is the raison d'etre of the [employer's] business, and that traveling to patients' homes is an essential component of that service." *Olsten Kimberly Quality Care* v. *Pettey*, supra, 55 Ark. App. 346.

"According to Professor Larson, one of [the] recognized exceptions [to the coming and going rule] is where the journey itself is part of the service. It is well-settled law that traveling men are generally within the course of their employment from the time they leave home on a business trip until they return, for the self-evident reason that traveling itself is a large part of the job. 1 Arthur Larson, The Law of Workmen's Compensation § 16.01 (1996). Another example of travel being an integral part of the job is where the employee must travel from job site to job site, whether or not he or she is paid for the travel time. Id., § 16.23. As stated by Professor Larson: [T]he fact that the employee is *not* paid for his travel time does not mean that the trip was *not* in the course of employment. Payment for time is only one of the evidences that the journey itself was part of the service." (Emphasis in original; internal quotation marks omitted.) *Olsten Kimberly Quality Care* v. *Pettey*, supra, 328 Ark. 386.

The Arkansas Supreme Court also considered whether the employee is required to furnish his or her own vehicle. "If the employee as part of his job is required to bring with him his own car, truck or motorcycle for use during his working day, *the trip to and from work is by that fact alone embraced within the course of employment.* [1 A. Larson, supra, § 17.51]. The theory behind this principle of law is that the obligations of the job reach out beyond the premises, making the vehicle part of the employment environment and compelling the employee to submit to the everyday hazards associated with road travel, which he or she would otherwise be able to avoid. Id., § 17.52. Furthermore, such a situation is for the benefit of and service to the employer." (Emphasis in original; internal quotation marks omitted.) Id.

We agree with and apply the reasoning of the Arkansas courts to this case. In the present case, the travel the plaintiff was required to undertake to reach the homes of the defendant's clients was integral to the very service the defendant was offering its clients. "In home" was the essence of the service provided. The plaintiff never performed health care services at the defendant's office. We think that it makes no difference that the plaintiff traveled to the homes of the defendant's clients via public transportation rather than in her personal automobile. The reason the plaintiff did not have an operator's license or a motor vehicle is irrelevant; she had to get to the homes of the defendant's clients. At the time of her accident, she was at a place where she reasonably could have been expected to be in the performance of her duties. Furthermore, this court notes public policy reasons that the use of public conveyances should be encouraged, e.g., to reduce traffic congestion.

For the foregoing reasons, we conclude that the injury the plaintiff sustained arose out of and in the

course of her employment and is, therefore, compensable. Her injury occurred within her period of employment because her travel was integral to the service provided by her employment. The plaintiff's injury constitutes an exception to the coming and going rule because the defendant required her to travel on the highway, paid portions of her transportation costs, the injury was incidental to her employment and, in fact, her travel benefited the defendant's business.[7]

The decision of the workers' compensation review board is reversed and the case is remanded to the board with direction to affirm the commissioner's decision dated June 12, 2000.

In this opinion the other judges concurred.

---

[7] Other cases in which the injury was found to be compensable because travel was part of the service that the employer provided to clients include *Olsten-Kimberly Quality Care* v. *Parr*, 965 S.W.2d 155 (Ky. 1998) (nursing assistant injured in automobile accident on way home from nursing assignment); *Ruckman* v. *Cubby Drilling, Inc.*, 81 Ohio St. 3d 117, 689 N.E.2d 917 (1996) (drill crew injured on way to job site owned by employer's customers, drill site subject to constant change).