******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SYLVIA N. KUEHL *v.* ROSALIND
J. KOSKOFF ET AL.
(AC 38128)

Lavine, Sheldon and Elgo, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant attorney and
the defendant law firm for alleged legal malpractice in connection with
their representation of the plaintiff in certain proceedings related to an
underlying personal injury action that concerned an automobile accident
involving the plaintiff's husband, G. In the underlying action, G and the
plaintiff signed retainer agreements with the defendants, which stated,
inter alia, that the law firm was retained to pursue claims against any
party arising out of the collision. In December, 1991, G, on his own
behalf, filed a notice of claim for workers' compensation benefits related
to the collision, which had occurred while he was driving from his home
office to a business appointment, and his employer and the employer's
insurance company contested his claim. The defendants thereafter com-
menced a personal injury action against the operator and owner of the
other motor vehicle involved in the collision in November, 1992, and G
died shortly thereafter. The personal injury action was eventually settled.
At the time of G's death, the defendant attorney did not advise the
plaintiff to contact a workers' compensation attorney, and the plaintiff
never filed a formal notice of a claim for workers' compensation survi-
vor's benefits within one year of G's death pursuant to statute (§ 31-
294c [a]). The plaintiff, however, requested a hearing for survivor's
benefits, and following a hearing, the Workers' Compensation Commis-
sioner issued a decision determining that the plaintiff's failure to file a
formal notice precluded her from pursuing a claim for survivor's benefits,
which was affirmed by the Workers' Compensation Review Board and
by our Supreme Court. Thereafter, the plaintiff commenced the present
action, claiming that the defendants committed legal malpractice by
failing to tell her that she was required to file a notice of claim for
survivor's benefits within the one year statute of limitations. After a
trial, the jury found in favor of the plaintiff, and the defendants filed
certain posttrial motions, including a motion to set aside the verdict,
claiming, inter alia, that the plaintiff was required to present expert
testimony in a legal malpractice action showing that the defendants'
breach of the standard of care proximately caused the plaintiff's alleged
damages, which the plaintiff did not do. The trial court denied the
defendants' posttrial motions, and the defendants appealed to this court.
*Held* that the trial court improperly denied the defendants' motion to
set aside the verdict; although the plaintiff presented the testimony of
an attorney expert who practiced personal injury litigation and workers'
compensation law, the plaintiff failed to provide expert testimony as to
causation, as her expert did not testify that the failure of the defendant
attorney to file a workers' compensation claim on behalf of the plaintiff
was a proximate cause of the plaintiff's damages or that the plaintiff
would have prevailed on the issues related to the workers' compensation
claim, namely, whether the collision occurred during the course of G's
employment and whether the collision was a proximate cause of his
death, and the trial court improperly concluded that the jury could
discern whether the collision occurred during the course of G's employ-
ment and that his death was the result of the collision, as the court
did not address the statutory and regulatory rules related to workers'
compensation claims, which were complex and not within the ken of
the jury, and for which expert testimony was required to enable the
jury to determine the causal relationship between any legal malpractice
and the plaintiff's alleged damages.

Argued January 5—officially released June 12, 2018

*Procedural History*

Action to recover damages for, inter alia, legal mal-

practice, and for other relief, brought to the Superior Court in the judicial district of Stamford; thereafter, the court, *Povodator, J.*, granted the motion to substitute Clifford A. Mollo, executor of the estate of the plaintiff, as the party plaintiff; subsequently, the case was tried to the jury; verdict for the substitute plaintiff; thereafter, the court denied the defendants' motion for a directed verdict, motion for judgment notwithstanding the verdict, and motion to set aside the verdict, and rendered judgment in accordance with the verdict, from which the defendants appealed and the substitute plaintiff cross-appealed to this court. *Reversed*; *judgment directed.*

*James J. Healy*, with whom, on the brief, was *Matthew W. Naparty*, for the appellants/cross-appellees (defendants).

*Ridgely Whitmore Brown*, with whom were *David M. S. Shaiken* and *Benjamin E. Gershberg*, and, on the brief, *Mark S. Shipman* and *Austin Sherwood Brown*, legal intern, for the appellee/cross-appellant (substitute plaintiff).

*Opinion*

LAVINE, J. Except in obvious situations, expert testimony generally is required to establish the element of causation in a legal malpractice case. See *Bozelko* v. *Papastavros*, 323 Conn. 275, 284–85, 147 A.3d 1023 (2016). "Because a determination of what result should have occurred if the attorney had not been negligent usually is beyond the field of ordinary knowledge and experience possessed by a juror, expert testimony generally will be necessary to provide the essential nexus between the attorney's [alleged] error and the plaintiff's damages." Id., 285.

In this legal malpractice action, the defendants, Rosalind J. Koskoff and the law firm of Koskoff, Koskoff & Bieder, P.C.,[1] appeal from the judgment of the trial court rendered, after a jury trial, in favor of the plaintiff, Sylvia N. Kuehl.[2] To summarize, this protracted litigation concerns the plaintiff's contention that the defendants breached the duty of care they owed her during their representation of her in an underlying personal injury action involving her late husband, Guenther Kuehl (decedent), when the defendants failed to file a claim for survivor's benefits under our Workers' Compensation Act (act), General Statutes § 31-275 et seq., within a year of his death.[3] At trial, the defendants claimed that the plaintiff failed to prove the proximate cause element of a negligence cause of action because she failed to present expert testimony that, more likely than not, she would have been awarded survivor's benefits under the act if the defendants had submitted her claim. On appeal, the defendants claim that the trial court improperly denied their motion for a directed verdict, motion for judgment notwithstanding the verdict, and motion to set aside the verdict.[4] We reverse the judgment of the trial court.[5]

The following facts and procedural history are relevant to the issue on appeal. The events giving rise to this case began on the morning of June 26, 1991, when a squirrel darted across a street in Greenwich causing a motorist to swerve and collide with the motor vehicle operated by the decedent.[6] Later in the day, the decedent went to an emergency room and was diagnosed with a cervical strain. At the time, the decedent was the president and owner of Z-Loda Systems Engineering, Inc. (Z-Loda). *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, 265 Conn. 525, 527, 829 A.2d 818 (2003). The decedent believed that he had been injured in the course of his employment because, at the time of the collision, he was driving from his Greenwich home, where he had an office in addition to his office at Z-Loda, to a business appointment in Tarrytown, New York. On August 3, 1991, the decedent suffered an aortic dissection that was surgically repaired. The plaintiff and the decedent believed that his aortic dissection was a result of the injuries the decedent suffered in

the collision.

On September 24, 1991, the decedent and the plaintiff each signed a retainer agreement with the firm for their respective claims arising out of the collision. The plaintiff's retainer agreement stated that the firm was retained "to pursue and if warranted to prosecute a claim or claims against any party or parties arising out of the following: Accident to my husband on 6/26/91 in Greenwich, CT."[7] Koskoff was the firm's attorney who assumed responsibility for the case.

On December 16, 1991, the decedent, on his own behalf, filed a notice of claim for workers' compensation benefits (compensation claim). *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, supra, 265 Conn. 528. On January 21, 1992, Z-Loda and Travelers Insurance Company (Travelers), the workers' compensation insurance carrier for Z-Loda, filed a notice contesting the decedent's claim on two grounds: that the collision was not work related and that even if it were, the decedent's injuries were unrelated to the collision.[8] Id., 528–29. On November 1, 1992, Koskoff, on behalf of the plaintiff and the decedent, commenced a personal injury action against the operator and owner of the motor vehicle (tortfeasors) involved in the collision. Id., 529. The decedent alleged claims to recover damages for his personal injuries and losses; the plaintiff alleged a claim to recover damages for loss of consortium.

On November 14, 1992, the decedent died, and the plaintiff, as executrix of his estate, was substituted for him as the plaintiff in the personal injury action. Id. The plaintiff amended the complaint to allege that the decedent's death was a result of his aortic aneurysm, which in turn was a consequence of the injuries he sustained in the collision. Id. The plaintiff sent a copy of the amended complaint to Z-Loda in May, 1993, and Z-Loda moved to intervene in the personal injury action on the ground that it might become obligated to pay large sums to the decedent's estate "and/or to the plaintiff." (Internal quotation marks omitted.) Id. The plaintiff eventually settled the personal injury action and signed a release as to Travelers.[9] At the time of the decedent's death, Koskoff did not advise the plaintiff to contact a workers' compensation attorney because she knew that the decedent had met with an attorney specializing in workers' compensation law,[10] as previously recommended by Richard Bieder of the firm. "Although the decedent previously had filed a notice of claim for compensation in connection with his claim for workers' compensation benefits, the plaintiff did not file a separate notice of claim in connection with her claim for survivor's benefits." Id., 530 n.8.

On July 22, 1998, however, the plaintiff requested a hearing for survivor's benefits pursuant to § 31-306. Id., 530. On August 31, 1998, the Workers' Compensation Commissioner (commissioner) held a hearing on the

plaintiff's claim to determine whether she should be precluded from pursuing a claim for survivor's benefits due to the fact that she had not filed a formal notice of her claim within the statute of limitations pursuant to § 31-294c (a); id.; i.e., one year from the date of the decedent's death. Although the plaintiff presented several arguments as to why her failure to file notice should not be fatal to her claim, the commissioner concluded that her failure to file a formal notice precluded her from pursuing a claim for survivor's benefits. Id., 531–32. The plaintiff took two appeals, but the commissioner's decision was affirmed by the Workers' Compensation Review Board; id., 532; and by our Supreme Court. Id., 539. Our Supreme Court concluded that the plaintiff's failure to file a formal notice of claim pursuant to § 31-294c (a) deprived the commissioner of subject matter jurisdiction. See id., 534–35.

Thereafter, on March 16, 1999, the plaintiff commenced the present action against the defendants, alleging that they had failed to tell her that she was required to file a notice of claim for survivor's benefits within one year of the decedent's death to confer jurisdiction on the commissioner. See *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 806, 12 A.3d 852 (2011). The plaintiff alleged two counts: negligence or legal malpractice and breach of contract. Following the plaintiff's death, Clifford A. Mollo was appointed executor of her estate and substituted as the party plaintiff in the present action.[11]

The operative complaint was filed on May 1, 2014, during trial. It alleged in relevant part that the defendant was an attorney admitted to practice law in Connecticut and was employed by the firm. The plaintiff alleged that the decedent sustained personal injuries in the collision and that the tortfeasors had more than $3 million of insurance coverage. In addition, prior to the collision, Z-Loda had purchased workers' compensation coverage from Travelers that was available to compensate the decedent and the plaintiff for their losses. The plaintiff further alleged that she had retained Koskoff to prosecute "a claim or claims against any party or parties arising out of [the decedent's]" collision of June 26, 1991, and that the defendants accepted the employment and provided "legal representation to the plaintiff," which was continuous from October 19, 1991, until October 1, 1998.

The operative complaint also alleged that the defendants commenced a personal injury action against the tortfeasors on behalf of the decedent and the plaintiff on November 1, 1992. The plaintiff as executrix of the decedent's estate was substituted as the plaintiff after the decedent died. The plaintiff alleged that "Koskoff, in the exercise of the skills ordinarily expected of attorneys in the community practicing law under the same or similar circumstances, knew or reasonably should

have known" that under the act, the plaintiff was entitled to file a claim for survivor's benefits; that the time for filing a written notice of claim for survivor's benefits was one year from the date of the decedent's death; and that the failure to file a written claim for survivor's benefits on or before November 14, 1993, would bar the plaintiff from receiving survivor's benefits under the act. The plaintiff also alleged that the value of her claim for survivor's benefits was in excess of $1 million.

The plaintiff alleged that Koskoff was negligent in multiple ways but principally in that she failed to file a written notice of claim for survivor's benefits within one year of the decedent's death, failed to pursue benefits for the plaintiff when she knew or reasonably should have known that the plaintiff was entitled to them, and failed to advise the plaintiff that she had to file a notice of claim. In addition, she alleged that the defendants' negligent acts constituted legal malpractice that was a substantial factor in proximately causing her damages. On May 5, 2014, the defendants filed an answer and special defense to the amended complaint, in which they denied its material allegations and pleaded the special defense of comparative negligence on the basis of the plaintiff's alleged negligence in failing to consult with other counsel for the purposes of filing for benefits under the act as she had been advised to do, and failure to retain counsel for that purpose.

The parties tried the case to a jury in April and May, 2014. The evidence relevant to the determinative issue in this appeal concerns the expert testimony the plaintiff presented as to the prevailing standard in the legal community, whether Koskoff had breached that standard of care when representing the plaintiff, and whether the alleged breach proximately caused the plaintiff's alleged losses and damages.[12] The plaintiff's expert witness was Thomas Willcutts, an attorney who practices in the areas of personal injury and workers' compensation law. The defendants contend that he did not offer expert testimony as to the prevailing standard of professional care, but instead testified only about his personal preferences, and that he did not offer expert testimony that the defendants' negligence proximately caused the plaintiff's alleged losses and damages.

Willcutts testified in part that Koskoff "does not know workers' comp. She knows some of it, but she would not consider herself someone who would handle a workers' compensation matter, which is okay. You can handle the personal injury side of the case and not the workers' compensation case. So that in itself I don't see as a problem. So I am judging her not as a workers' compensation lawyer and what a workers' compensation [lawyer] should know and should do, but my opinion is based on her being a personal injury lawyer who takes the position that she doesn't know workers' comp., but is handling a case that involves workers' comp. . . .

Well, lawyers can make mistakes and they don't necessarily cause any harm. Part of my opinion is based upon the information in terms of what I expect would occur in this case had it been handled the way I believe it should have been handled." Although Willcutts testified at length about Koskoff's alleged mistakes in handling the plaintiff's claim, he did not testify that her alleged breach of the standard of care proximately caused the plaintiff's alleged losses and damages, that is that the plaintiff would have received survivor's benefits if Koskoff had submitted a claim for such benefits or if she had referred the matter to a lawyer who specializes in workers' compensation claims.

At the conclusion of the plaintiff's case-in-chief, the defendants moved for a directed verdict on the ground that the plaintiff had failed to produce expert testimony to establish that she likely would have prevailed on her claim for survivor's benefits because the complexities of workers' compensation law are not common knowledge to the jurors.[13] The defendants argued that because the plaintiff claimed that her damages flowed from the loss of her right to pursue survivor's benefits under the act, she needed to present a legal expert to testify that she more than likely would have been awarded survivor's benefits if she had submitted a claim. Such an action is proved by presenting what is known as a case-within-a-case. See, e.g., *Grimm* v. *Fox*, 303 Conn. 322, 352, 33 A.3d 205 (2012) (*Palmer*, *J.*, concurring). The plaintiff faced a difficult challenge in proving causation, in that Z-Loda and Travelers had contested the claim that the self-represented decedent filed on the grounds that the injuries he sustained in the collision did not arise in the course of his employment and that his aortic dissection and ensuing death were not proximately caused by the collision. The court denied the defendants' motion for a directed verdict.

The case and certain interrogatories were submitted to the jury on May 13, 2014. The jury found, pursuant to its answers to interrogatories, that the defendants departed from the standard of care that they owed the plaintiff and the departure proximately caused the financial harm that the plaintiff sustained. The jury also found that the defendants had proved that the plaintiff's negligence in failing to follow their advice to consult with an experienced workers' compensation attorney was a proximate cause of the financial harm that she sustained. The jury apportioned 85 percent of the negligence to the defendants and 15 percent of it to the plaintiff. The jury found that the plaintiff's damages were $1.1 million, but reduced that sum by 15 percent to $935,000, due to the plaintiff's comparative negligence, in awarding the plaintiff damages on her legal malpractice claim.[14]

Thereafter the defendants moved for a judgment notwithstanding the verdict and to set aside the verdict.

On July 21, 2014, they filed a memorandum of law in support of their postjudgment motions. In their memorandum of law, the defendants cited numerous cases for the proposition that a plaintiff must present expert testimony in a legal malpractice action that the defendant's breach of the standard of care proximately caused the plaintiff's alleged losses and damages. See *Byrne* v. *Grasso*, 118 Conn. App. 444, 451–52, 985 A.2d 1064 (2009) (to prove damages for alleged malpractice in challenging claim for attorney's fees, plaintiff had to present expert testimony that, without malpractice, fee challenge could have been successful), cert. denied, 294 Conn. 934, 987 A.2d 1028 (2010); *Dixon* v. *Bromson & Reiner*, 95 Conn. App. 294, 299–300, 898 A.2d 193 (2006) (in legal malpractice case expert witness is necessary to opine that defendant's alleged breach of standard of care proximately caused plaintiff's alleged loss or damages; judge not expert in every area of law); *DiStefano* v. *Milardo*, 82 Conn. App. 838, 843, 847 A.2d 1034 (2004) (directed verdict proper if plaintiff fails to present expert testimony on issue of proximate causation in legal malpractice actions), aff'd, 276 Conn. 416, 886 A.2d 415 (2005); *Vona* v. *Lerner*, 72 Conn. App. 179, 188–92, 804 A.2d 1018 (2002) (expert testimony serves to assist lay members of jury and presiding judge and to prevail on negligence claim, plaintiff must establish that defendant's conduct proximately caused injuries), cert. denied, 262 Conn. 938, 815 A.2d 138 (2003).[15]

On June 18, 2015, the court issued a lengthy memorandum of decision on the defendants' postverdict motions, as well as the postverdict motions filed by the plaintiff.[16] We need address only that portion of the court's decision with respect to the defendants' claim that the plaintiff was required to provide expert testimony to prove that the defendants' alleged breach of the standard of care proximately caused her alleged damages.

The court outlined the legal complexities of the plaintiff's case. "[I]nstead of the usual trial within a trial format, this case had a trial within a trial within a trial quality. Long before most of the issues in this case had developed, [the decedent] had died. The real workers' compensation issue became not so much the claim that he might have been able to pursue, but rather the [survivor's] benefits which [the plaintiff] might have received, had workers' compensation issues been pursued properly/diligently. That however entails its own trial within a trial element—in order for [the plaintiff] to have had a right to survivor's benefits, [there] first would have to be proof that the injury to [the decedent] was a compensable claim under workers' compensation. In other words, the viability of the survivor's benefit claim was contingent upon the viability of the underlying claim of [the decedent]."

The court summarized the issue presented by the defendants' postverdict motions as follows: "[The]

defendants claim that there was a need for expert testimony as to the likely outcome, had the initial claim by [the decedent], and the later [survivor's] claim of [the plaintiff], been properly and timely submitted to the administrative process of workers' compensation—what would a commissioner have done? The court does not believe that [the] defendants have submitted adequate authority for such a requirement; they have not adequately refuted the suggestion . . . of [the] plaintiff that that would be asking for an opinion as to an ultimate issue for the jury to decide." The court concluded that the jury reasonably could have found that the defendants had breached a duty to take care of all legal matters arising from the collision. It also concluded that there was adequate, if not overwhelming, evidence that the requirements to establish a valid workers' compensation claim by the decedent existed and that it would have been successful if timely filed, which in turn would have led to the awarding of survivor's benefits to the plaintiff if her claim had been submitted.

In other words, the court was of the opinion that the plaintiff had presented sufficient evidence to permit the jury to infer that there was a causal link between the collision and the decedent's injuries. It found that the medical evidence, if considered as presenting a chain of interrelated elements, established a causal connection between the collision and the condition that eventually led to the decedent's death. It found that when they prosecuted the personal injury action, the defendants argued that there was evidence of "medical linkage" between the collision and the decedent's aortic dissection. The court therefore concluded that there was sufficient evidence for the jury to find that the decedent's injury was compensable under the act. In summary, the court believed that "there was adequate evidence presented that would allow a jury to infer that there was a causative link between the injury-causing [collision] and the eventual death of [the decedent]. The appropriate standards were presented through an expert [Willcutts]. There was evidence and discussion of the evidence relating to the employment nexus, including records created by [the] defendants. Again, the court must return to the refrain that even weak evidence, and evidence that must be stitched together, can be sufficient to support a jury verdict." For these and other reasons, the court denied the defendants' postverdict motions and rendered judgment for the plaintiff. The defendants appealed.

The essence of the defendants' claims on appeal concerns legal malpractice. "Malpractice is commonly defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services . . . ." (Internal

quotation marks omitted.) *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 649, 850 A.2d 145 (2004). Generally, a plaintiff who alleges legal malpractice must prove all of the following elements: "(1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) *causation*; and (4) damages." (Emphasis added; internal quotation marks omitted.) *Grimm* v. *Fox*, 303 Conn. 322, 329, 33 A.3d 205 (2012). There is no dispute that an attorney-client relationship existed between the parties. The case turns on the causation element of legal malpractice.

"The essential element of causation has two components. The first component, causation in fact, requires us to determine whether the injury would have occurred but for the defendant's conduct. . . . The second component, proximate causation, requires us to determine whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . That is, there must be an unbroken sequence of events that tied [the plaintiff's] injuries to the [defendants' conduct]. . . . The causal connection must be based [on] more than conjecture and surmise. . . . [N]o matter how negligent a party may have been, if his negligent act bears no [demonstrable] relation to the injury, it is not actionable . . . .

"The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . . In legal malpractice actions arising from prior litigation, the plaintiff typically proves that the . . . attorney's professional negligence caused injury to the plaintiff by presenting evidence of what would have happened in the underlying action had the [attorney] not been negligent. This traditional method of presenting the merits of the underlying action is often called the case-within-a-case. . . . More specifically, the plaintiff must prove that, in the absence of the alleged breach of duty by her attorney, the plaintiff would have prevailed [in] the underlying cause of action and would have been entitled to judgment. . . . To meet this burden, the plaintiff must produce evidence explaining the legal significance of the attorney's failure and the impact this had on the underlying action." (Citations omitted; internal quotation marks omitted.) *Bozelko* v. *Papstavros*, supra, 323 Conn. 283–84.

"Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *Card* v. *State*, 57 Conn. App. 134, 138, 747 A.2d 32 (2000). Expert testimony is permitted in many instances, but it is required "only [if] the question involved goes beyond the field of the ordinary knowledge and experi-

ence of a [trier of fact].” *Franchey* v. *Hannes*, 155 Conn. 663, 666, 237 A.2d 364 (1967).

“[Our Supreme Court] has explained that, as a general matter, expert testimony is necessary in legal malpractice cases in order to establish the standard of care, against which the attorney’s conduct should be evaluated by the jury.” *Bozelko* v. *Papastavros*, supra, 323 Conn. 282–84. Expert testimony is required because to know the outcome if an attorney had not been negligent is beyond the ken of the ordinary trier of fact. Id., 285. Expert testimony provides the required nexus between the attorney’s negligence and the plaintiff’s damages. Id. “In complex legal malpractice matters, expert testimony is necessary to keep the jury from speculating on how the client’s loss or injury is directly linked to that which he claims was the breach of duty by the attorney.” (Emphasis omitted.) Id., 289.

In the present case, the plaintiff presented the testimony of Willcutts, an attorney who practices personal injury litigation and workers’ compensation law. We carefully have reviewed his testimony as to how he handles workers’ compensation cases. He testified that litigating a personal injury case is different from litigating a workers’ compensation case. He also testified that Koskoff was a personal injury lawyer, not a workers’ compensation lawyer. He identified the decedent’s report of the collision that should have put Koskoff on notice of a compensation claim and opined that she should have filed a claim. Nowhere in his testimony, however, did he testify that her failure to do so was a proximate cause of the plaintiff’s injuries and loss. At no time did he testify that the plaintiff would have prevailed on the issues related to the case-within-a-case, namely whether the collision occurred during the course of the decedent’s employment and the collision was a proximate cause of his death, in the face of Z-Loda and Travelers filing notice that they intended to contest the decedent’s claim for benefits. Z-Loda and Travelers contested the decedent’s claim on the grounds that the collision did not occur in the course of his employment and that his injuries and death were not proximately caused by the collision.[17] As to whether the collision occurred during the course of the decedent’s employment, Willcutts mentioned the coming and going rule that applies to an employee’s commute to his place of employment or start of the work day, but he did not opine that had Koskoff filed a compensation claim the plaintiff more likely than not would have received survivor’s benefits. This omission was especially critical in light of the fact that Z-Loda and Travelers were contesting the decedent’s claim for workers’ compensation benefits.

In denying the defendants’ motion for judgment notwithstanding the verdict, the court found that “[the] plaintiff produced at least the minimum evidence

needed to present the case to the jury, which in turn was at least the minimum evidence needed to support a possible verdict in favor of [the] plaintiff." The court also found that "the evidence was not overwhelming and may have had to be pieced or stitched together, but that is not an issue to be addressed by way of motion for judgment notwithstanding the verdict or motion to set aside the verdict." It concluded that the jury could discern whether the collision occurred during the course of the decedent's employment and that his death was the result of the collision. In coming to that conclusion, the court found applicable the law related to proximate cause in a personal injury action. It did not, however, address the statutory and regulatory rules related to workers' compensation claims, in particular the coming and going rule that controls whether an injury that was sustained during an employee's commute arose in the course of employment.[18] It can hardly be said that the statutes and regulations regarding workers' compensation are within the ken of the jury. It is for that reason that expert testimony is needed to prove causation in a legal malpractice action.

"It is well settled that, because the purpose of the act is to compensate employees for injuries without fault by imposing a form of strict liability on employers, to recover for an injury under the act a plaintiff must prove that the injury is causally connected to the employment. To establish a causal connection, a plaintiff must demonstrate that the claimed injury (1) arose out of the employment, and (2) in the course of the employment. . . .

"The determination of whether an injury arose out of and in the course of employment is a question of fact for the commissioner." (Citation omitted; internal quotation marks omitted.) *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, 84 Conn. App. 220, 225–26, 853 A.2d 597 (2004), aff'd, 274 Conn. 219, 875 A.2d 485 (2005).

"The purpose of the [workers'] compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer. . . . A commissioner may exercise jurisdiction to hear a claim only under the precise circumstances and in the manner particularly prescribed by the enabling legislation. . . . The [act] is not triggered by a claimant until he brings himself within its statutory ambit. . . . Although the [act] should be broadly construed to accomplish its humanitarian purpose . . . its remedial purpose cannot transcend its statutorily defined jurisdictional boundaries. . . .

"In order to establish that [the] injury occurred in the course of employment, the claimant has the burden of proving that the accident giving rise to the injury took place (a) within the period of the employment;

(b) at a place [the employee] may reasonably [have been]; and (c) while [the employee was] reasonably fulfilling the duties of the employment or doing something incidental to it. . . . An injury is said to arise out of the employment when (a) it occurs in the course of the employment and (b) is the result of a risk involved in the employment or incident to it or to the conditions under which it is required to be performed. . . .

"Ordinarily, an injury sustained by an employee on a public highway while the employee is going to or coming home from work is not compensable. . . . A principal reason for this rule is that employment ordinarily does not commence until the claimant has reached the employer's premises, and consequently an injury sustained prior to that time would ordinarily not occur in the course of the employment so as to be compensable. Furthermore, in cases falling within the ordinary rule, the employee's means of transportation, as well as his route are entirely within his discretion, unfettered by any control or power of control on the part of the employer. . . .

"A number of exceptions, however, exist to the coming and going rule. Those exceptions are: (1) [i]f the work requires the employee to travel on the highways; (2) where the employer contracts to furnish or does furnish transportation to and from work; (3) where, by the terms of his employment, the employee is subject to emergency calls and (4) where the employee is injured while using the highway in doing something incidental to his regular employment, for the joint benefit of himself and his employer, with the knowledge and approval of the employer." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) Id., 227–29.

The standards and legal principles related to our workers' compensation scheme are complex and no amount of factual background presented to a jury would enable them to determine the causal relationship between legal malpractice, if any, and the plaintiff's alleged losses and damages without the assistance of expert testimony, especially when the cause of action involves the presentation of a case-within-a-case. In the present matter, the plaintiff failed to provide expert testimony as to causation, and for that reason the court erred in denying the defendants' motion to set aside the verdict.[19]

The judgment is reversed and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.

[1] In this opinion we refer to Rosalind J. Koskoff as Koskoff and to Koskoff, Koskoff & Bieder, P.C., as the firm, and to them jointly as the defendants. Richard Bieder and Travelers Companies were defendants at trial, but they are not parties to this appeal.

[2] The plaintiff died during the pendency of this case, and Clifford A. Mollo, the executor of her estate, was substituted as the plaintiff. In this opinion, we refer to Sylvia N. Kuehl as the plaintiff.

[3] See General Statutes §§ 31-294c, 31-306.

[4] The defendants raised three claims on appeal: (1) the trial court erred in refusing to enter judgment in their favor because the plaintiff failed to offer expert testimony to prove causation; (2) even if the plaintiff had produced expert testimony to show the outcome of the workers' compensation proceeding, she failed to establish a necessary element of her claim for her survivor's benefits claim, i.e., that the decedent's death was work related; and (3) she failed to prove the standard of care and breach of the standard. We resolve the appeal on the basis of the defendants' first claim and, therefore, need not address the others.

[5] The substitute plaintiff filed a cross appeal claiming that the court erred by (1) denying the plaintiff's motion to set aside the verdict and motion for judgment notwithstanding the verdict with respect to the jury's finding her 15 percent comparatively negligent, (2) setting aside the $165,000 verdict on the breach of contract count, (3) striking the failure to notify count of the complaint, and (4) denying the plaintiff prejudgment interest pursuant to General Statutes § 37-3a. Because we reverse the judgment on the ground that the plaintiff failed to present expert testimony that the defendants' alleged omission was a proximate cause of the plaintiff's injuries, we need not address the cross appeal.

[6] The collision indirectly gave rise to two appeals in our Supreme Court. See *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 802, 12 A.3d 852 (2011) (workers' compensation respondent had standing in declaratory judgment action to challenge constitutionality of public act permitting claimant to file claim for survivor's benefits outside statute of limitations); *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, 265 Conn. 525, 527, 829 A.2d 818 (2003) (plaintiff precluded from obtaining survivor's benefits under General Statutes § 31-306 [a] because she failed to file notice of claim for compensation with decedent's employer or workers' compensation commissioner).

[7] In the present action, the plaintiff claims that the retainer obligated the defendants to preserve any workers' compensation rights she and the decedent had. The defendants deny that claim and argue that they were only obligated to pursue a personal injury action.

[8] The trial court quoted from *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, supra, 265 Conn. 529, for the fact that the decedent's compensation claim had not yet been resolved and no benefits had been paid in connection with it.

[9] The trial court in the present case found that Travelers had limited involvement in the personal injury action given the possibility that it could recover compensation benefits paid or payable to the decedent pursuant to General Statutes § 31-293.

[10] The workers' compensation firm of Abate and Fox met with the decedent to discuss his compensation claim but did not prosecute it on behalf of the decedent.

[11] In March, 2000, the plaintiff amended her complaint to add a third count alleging that the defendants were aware of their negligence in failing to advise her to file a timely claim for survivor's benefits but failed to disclose their knowledge to the plaintiff. That count was not submitted to the jury.

[12] During the plaintiff's case in chief, Koskoff testified, in relevant part, that she knew nothing about worker's compensation law. A letter written by Koskoff that was placed in evidence stated that "[o]ur office . . . does not do workers' compensation law."

We note that there is no statute comparable to General Statutes § 52-184c, which is applicable in actions alleging the negligence of a health-care provider, for actions alleging negligence of an attorney. Section 52-184c (a) states in relevant part: "The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers . . . ." There is no issue on appeal concerning the qualifications or legal specialization required to testify as to the standard of care applicable to the type of law practiced by a defendant attorney. We note, however, that the practice of law has become highly specialized.

[13] The defendants specifically argued that "the plaintiff claims the defendants were negligent such that the decedent's ability to pursue a claim for workers' compensation benefits was lost. The original decision maker would have been a workers' compensation commissioner, an individual whose experience and base of knowledge regarding workers' compensation proceedings and law far exceed that of the jury." Moreover, they argued "[i]t is an axiom of [workers'] compensation law that awards are determined by a two-part test. The [claimant] has the burden of proving that the injury

claimed [1] arose out of the employment and [2] occurred in the course of the employment." (Internal quotation marks omitted.) *Perun* v. *Danbury*, 143 Conn. App. 313, 316, 67 A.3d 1018 (2013).

[14] The jury's answers with respect to the plaintiff's breach of contract claim and associated verdict are not relevant to the issue in this appeal.

[15] See also *Davis* v. *Margolis*, 215 Conn. 408, 416, 576 A.2d 489 (1990) (expert testimony must be evaluated in terms of helpfulness to trier of fact on specific issues of standard of care and alleged breach of that standard).

[16] Because we determine that the plaintiff could not prevail on her malpractice claim due to her failure to present expert testimony with respect to causation, we need not address her postverdict motions.

[17] Willcutts testified that there was only one informal hearing on the decedent's compensation claim. There was never a formal denial of the claim. Nonetheless, he did not testify that it was more likely than not that the plaintiff would have prevailed if the claim had been pursued.

[18] See *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, 84 Conn. App. 220, 228–29, 853 A.2d 597 (2004), aff'd, 274 Conn. 219, 875 A.2d 485 (2005) (explaining coming and going rule).

[19] The defendants also argue that the plaintiff failed to establish the standard of care because Willcutts testified as to his preferences and not the baseline standard of care. The case of *Vona* v. *Lerner*, supra, 72 Conn. App 179, is particularly instructive in the present case. In *Vona*, this court reviewed the testimony of the plaintiffs' expert and concluded that "the court properly granted the defendants' motion for a directed verdict. All of [the expert's] responses to the hypothetical questions asked of him with respect to the proximate cause of the plaintiffs' alleged damages were based on his personal belief, as opposed to the standard of care, and were conditional or speculative. As we noted in discussing the standard of review applicable to challenges to directed verdicts, a trial court should direct a verdict in the defendants' favor where there is insufficient evidence to support a verdict favorable to the plaintiffs." (Footnote omitted.) Id., 190–91. Our review of Willcutts' testimony reveals that he opined that the defendants violated the standard of care and deprived the plaintiff of the opportunity to submit a claim for survivor's benefits. He, however, did not opine that, if the plaintiff had submitted a claim, she more likely than not would have prevailed.